**In re Wayne Clarence WEBB, Judith Ann Webb, Debtors.**

**Judith Ann WEBB, Plaintiff,**

v.

**STUDENT LOAN FUNDING CORPORATION, Defendant.**

Bankruptcy No. 92–60385.
Adv. No. 92–6220.

United States Bankruptcy Court, N.D. Ohio.

Oct. 15, 1992.

Edwin H. Breyfogle, Massillon, OH, for plaintiff.

Lloyd J. Blaney, Madison, WI, Frederick S. Coombs, Youngstown, OH, for defendant.

## MEMORANDUM OF DECISION

JAMES H. WILLIAMS, Chief Judge.

The court has jurisdiction in this adversary proceeding by virtue of 28 U.S.C. § 1334(b) and General Order No. 84 entered in this district on July 16, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I). This Memorandum of Decision constitutes the court's findings of fact and conclusions of law pursuant to Fed. R.Bankr.P. 7052.

## FACTS

The debtor in this case, Judith Ann Webb, has filed for bankruptcy under Chapter 7 of Title 11 of the United States Code. She lists various student loans totaling $17,000.00 in her schedule of unsecured nonpriority loans. She has filed the instant adversary complaint seeking a declaration of the dischargeability of the student loans.

It has been stipulated that Webb, formerly known as Judith Ann Thomas, is the principal obligor and not a co-signor or surety and that the loans were obtained for the debtor's daughter's education through the PLUS loan program. The defendant, Student Loan Funding Corp., (SLFC), was the administrator of the loans and through the Great Lakes Higher Education Corp. (Great Lakes), has paid the lender upon the debtor's default. SLFC claims, and the debtor admits, that its portion of the debt is $9,525.60 which includes accrued interest up to February 20, 1992.

The plaintiff has filed for summary judgment based upon her position that 11 U.S.C. § 523(a)(8)[1] does not apply to student loans made to nonstudent borrowers.

## DISCUSSION

Standards on summary judgment under Fed.R.Civ.P. 56, are made applicable to bankruptcy proceedings by Fed.R.Bankr.P. 7056. Rule 56 provides for a grant of summary judgment as follows:

(c) The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

The party seeking summary judgment bears the initial burden of asserting that the pleadings, depositions, answers to interrogatories, admissions and affidavits establish the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Street v. J.C. Bradford*, 886 F.2d 1472, 1479 (6th Cir.1989). The ultimate burden of demonstrating the existence of a genuine issue of material fact, however, lies with the nonmoving party. *J.C. Bradford*, 886 F.2d at 1479. *See also, First National Bank v. Cities Ser-*

---

1. A discharge under section 727 ... does not discharge an individual debtor from any debt—

   .    .    .    .    .

  (8) for an education benefit overpayment or loan made, insured, or guaranteed by a governmental unit ... unless—

   (A) such loan ... first became due before more than 7 years before the date of the filing of the petition; or

  (B) excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents.

   .    .    .    .    .

*vice Co.*, 391 U.S. 253, 288–89, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968).

> When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.... In the language of the Rule, the nonmoving party must come forward with "specific facts showing that there is a *genuine issue for trial.*" F.R.Civ.Proc. 56(e) (emphasis added). Where the record taken as a whole could not lead a rational trier fact to find for the nonmoving party, there is no "genuine issue for trial."

*Matsushita Electric Industrial Co., LTD v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (citations and footnotes omitted).

The court concludes, for the reasons which follow, that summary judgment in the instant case would not be proper. There are material issues which remain as a result of the decision that Section 523(a)(8) does indeed apply to this debtor.

The debtor urges the court to follow *In re Boylen*, 29 B.R. 924 (Bankr. N.D.Ohio 1983). It was reasoned in *Boylen* that despite the clear language of Section 523(a)(8), which speaks only in terms of the type of loan, not the status of the borrower, the policy behind nondischargeability was to prevent only students from discharging their loans upon graduation. *Id.*, at 926. While *Boylen* is factually distinguishable from the instant case (*Boylen* involved a co-maker, not a principal obligor), its policy arguments would be persuasive if accepted by this court. *Boylen* points out that when a typical loan is made, the lender "generally relies upon collateral owned by the debtor or upon the good credit rating of the debtor. In the case of a student loan, however, most students have no credit rating or collateral to pledge as security against the student loan debt." *Id.* Additionally, the debtor in *Boylen* received no benefit in the form of an education or increased household income. *Id.*, 926–27. Due to those factors, it was found that to bar discharge of student loans would frustrate the fresh start policy behind the Bankruptcy Code. *Id.* at 927. This court believes that, despite these persuasive arguments, Congress did intend Section 523(a)(8) to apply to all student loan borrowers regardless of their status as comakers, sureties, or non-student borrowers.

At issue in this case is a series of PLUS loans made to a student's parent under 20 U.S.C. § 1078–2. PLUS loans are made exclusively to "[p]arents of a dependent student ... and unless otherwise specified in subsections (c) and (d), such loans shall have the same terms, conditions, and benefits as all other loans made under this part...." 20 U.S.C. § 1078–2(a). The fact that PLUS loans are made to students' parents calls into play the argument that the debtor will not benefit from the loan directly. PLUS loans are intended to increase a debtor's children's future earning ability. Nevertheless, the fact that PLUS loans were treated the same as other student loans by Congress under 20 U.S.C. § 1071 et seq., made applicable by Section 1078–2(a), leads one to the conclusion that the lack of direct benefit to the borrower does not warrant different treatment by the courts. Therefore, that much of the *Boylen* rationale does not militate in favor of discharging this debtor's obligation. The second part of the *Boylen* rationale, that lenders could look to other security from non-students, similarly does not warrant different treatment for PLUS loans under the Bankruptcy Code.

Part of the policy behind Section 523(a)(8) was explained in *Boylen* to be that lenders have no collateral or credit rating to look to as security for student loans. The only security available is the future earning ability of student borrowers. *Boylen*, at 926. It may be argued that lenders under the PLUS loan program may look to the more traditional forms of collateral items from students' parents because parents have assets which may be attached and they typically possess a credit history. This argument, however, is of no help to the instant debtor due to the statutory limitations placed upon lenders under 20 U.S.C. § 1071 et. seq.

20 U.S.C. § 1077 was expressly made applicable to PLUS loans pursuant to 20 U.S.C. § 1078–2(a). Section 1077 limits eligibility for government insurance to loans which are "made without security and with endorsement. . . ." 20 U.S.C. § 1077(a)(2)(A). *See also,* 34 C.F.R. §§ 628.103, 628.206(E)(1), (2). Therefore, regardless of the status of the borrower, lenders making government insured student loans must by statute forego forms of security other than the government's guarantee. The result is that parents are then similarly situated to students and there is no policy reason for treating them differently under Section 523(a)(8).

The argument that lenders may look to a parent's credit history for security, while a student typically will not have any such history, is of some merit. 20 U.S.C. § 1077 mandates that lenders obtain credit histories for borrowers who are over twenty-one years old. 20 U.S.C. § 1077(a)(2)(A)(i). Additionally, it provides that "an insufficient or nonexistent credit history may not be considered to be an adverse credit history." 20 U.S.C. § 1077(a)(2)(A)(ii). The effect of this provision is to put young students, who have not developed a credit history, in the same position as older persons who have. Thus, while lenders may protect themselves from persons proving to be a bad risk, no such protection is available from unproven risks in the form of students with no credit history. The question then becomes whether this factor is sufficient to overcome the clear language of 11 U.S.C. § 523(a)(8). In this court's opinion it is not.

*Boylen* held that the fresh start policy behind the Bankruptcy Code warranted discharge of student loans in the circumstances present in that case despite the language of Section 523(a)(8). *Boylen,* at 927. The policy behind the PLUS loan program is stated to be "to provide a Federal program of student loan insurance for students or lenders who do not have reasonable access to a State or private nonprofit program of student loan insurance. . . ." 20 U.S.C. § 1071(a)(B). If this court were to indicate that lenders could protect themselves by aggressively screening applicants

and that no further protection was needed from the bankruptcy courts through Section 523(a)(8), then the policy behind the student loan programs would be frustrated. Therefore, because lenders are encouraged to lend money to individuals under student loan programs, who may otherwise not be creditworthy, they should not be penalized by allowing discharge of their student loans on policy in contravention of the plain language of Section 523(a)(8).

For these reasons the court chooses to follow the line of cases which hold that Section 523(a)(8) applies to all borrowers of student loans, *In re Dull,* 144 B.R. 370 (Bankr.N.D.Ohio 1992); *Pelkowski v. Ohio Student Loan Commission,* 135 B.R. 254 (W.D.Pa.1992); *Education Resources Institute, Inc. v. Martin,* 119 B.R. 259 (E.D.Okla.1990); *Hudak v. Union National Bank of Pittsburgh,* 113 B.R. 923 (Bankr.W.D.Pa.1990); *Taylor v. Tennessee Assistance Corp.,* 95 B.R. 550 (Bankr. E.D.Tenn.1989); *Education Resources Institute, Inc. v. Hammarstrom,* 95 B.R. 160 (Bankr.N.D.Cal.1989); *Barth v. Wisconsin Higher Education Corp.,* 86 B.R. 146 (Bankr.W.D.Wis.1988), rather than *Boylen* and its progeny. The instant debtor must meet Section 523(a)(8) in order to discharge the student loans at issue, and therefore summary judgment is not proper.

An order in accordance with the foregoing will be issued forthwith.