**In the Matter of Dennis Paul BARTH and Judith Ann Barth, Debtors.**

**Judith BARTH, Plaintiff,**

v.

**WISCONSIN HIGHER EDUCATION CORP., Defendant.**

**Adv. No. 87–0256–7.**

United States Bankruptcy Court, W.D. Wisconsin.

June 6, 1988.

Jean M. Wiencek, Bell, Metzner & Gierhart, S.C., Madison, Wis., for plaintiff.

William H. Olson, Dew, Blaney & Olson, Madison, Wis., for defendant.

### MEMORANDUM DECISION

ROBERT D. MARTIN, Chief Judge.

In August of 1982, Judith Barth's ("Barth") son took out a $2,500 guaranteed student loan from the Bank of Waunakee, for which Barth signed as an "endorser" on September 15, 1982. The loan proceeds were used to finance her son's studies at the Madison Area Technical College.

The loan first came due on November 15, 1983. Less than two years later, on September 9, 1985, Barth filed a bankruptcy petition. She received a discharge on December 26, 1985.

On September 15, 1987, the Wisconsin Higher Education Corporation (WHEC) as assignee of the Bank of Waunakee, instituted a collection action on the loan against Scott and Judith Barth in state court. Barth then brought this adversary proceeding against WHEC alleging that WHEC's

civil action violated 11 U.S.C. § 524 which creates the injunction of discharge, and asking that WHEC be prohibited from proceeding with its civil suit. WHEC alleged that it was not in violation of section 524 because Barth's obligation was excepted from discharge granted to Barth under section 523(a)(8).

The issues presented are fairly simple:

1. If a debtor has not received educational benefits from a student loan, is the loan still an "educational loan" within the scope of section 523(a)(8); and

2. Should non-student co-makers of educational loans be exempted from the section 523(a)(8) exception to discharge because of legislative history that indicates section 523(a)(8) was primarily aimed at students?

The simple answers are:

1. Yes, the language of section 523(a)(8) is concerned with the nature of the loan, rather than what benefits the debtor may or may not have derived from the loan; and

2. No, the plain language of the statute should not be overridden without a clear expression of Congressional intent. The statutory language is inclusive of all debtors. While the primary target of this section may have been student debtors, the legislative history does not express a clear intent to exclude co-makers from the scope of this section.

\* \* \* \* \* \*

Section 524(a)(2) provides:

(a) A discharge in a case under this title (2) operates as an injunction against the commencement ... of an action ... to collect, recover or offset any such debt as a personal liability of the debtor.

Section 523(a)(8) provides an exception to the discharge granted under section 524(a)(2) for some educational loans:

(a) A discharge under section 727 ... does not discharge an individual debtor from any debt—

....

(8) for an educational loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or a nonprofit institution, unless—

(A) such loan first became due before five years (exclusive of any applicable suspension of the repayment period) before the date of the filing of the petition; or

(B) excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents.

Barth contends that section 523(a)(8) does not apply to her because, a.) the debt is not "educational", because she derived no direct educational benefit from the loan; b.) Congress did not intend for section 523(a)(8) to apply to endorsers or co-makers of student loans; and c.) the application of section 523(a)(8) to co-makers runs counter to the "fresh start" philosophy underlying the bankruptcy court.

Barth's claim that her debt to WHEC is not educational because it was not spent on her education misinterprets the language and focus of section 523(a)(8). The language of section 523(a)(8) does not refer to whether the debtor or anyone else derived educational benefits. If a student were to take out a guaranteed student loan and spend it on a car or vacation, the student would derive no educational benefit from the loan, and yet it would still fall within the scope of section 523(a)(8). The application of section 523(a)(8) cannot be nullified by spending the proceeds of the loan on something other than the debtor's education.

The focus of section 523(a)(8) is on the nature and character of the loan, specifically whether it was an educational loan made, insured, or guaranteed by a governmental unit or made under a program funded at least in part by a governmental unit. The subject loan was made under the Guaranteed Student Loan Program. Paragraph 16(b) of the note explicitly provided that the proceeds of the loan were to be used "solely to pay the expenses of attending the educational institution in which the maker is enrolled." The loan was guaran-

teed by a governmental unit.[1] Thus, the loan in question is an educational loan guaranteed by a government unit within the meaning of section 523(a)(8).

■ Barth cites *In re Boylen*, 29 B.R. 924 (Bankr. N.D. Ohio 1983) to support her claim that Congress intended that section 523(a)(8) apply only to the student debtor and not to any co-makers. The court in *Boylen* found that the intent of section 523(a)(8) was to prevent the abuse of the student loan program by students with large educational loans and few other debts, who file bankruptcy shortly after leaving school. *Boylen* at 926. The court concluded that because the legislative history focuses mainly on student borrowers, Congress must have meant to exempt co-makers from the application of section 523(a)(8). A number of courts have followed this reasoning. *See In re Washington*, 41 B.R. 211 (Bankr.E.D.Va.1984); *In re Bawden*, 55 B.R. 459 (Bankr.M.D.Ala. 1985); *In re Zobel*, 80 B.R. 950 (Bankr.N.D. Ia.1986); and *In re Behr*, 80 B.R. 124 (Bankr.N.D.Ia.1987). *But see In re Feenstra*, 51 B.R. 107 (Bankr.W.D.N.Y.1985).

I find the reasoning of *Boylen* unpersuasive. First, as the *Boylen* court noted, the plain language of section 523(a)(8) "does not appear to limit itself ... to the student debtor only." *Boylen*, 29 B.R. at 926. Instead, section 523(a)(8) appears to include all debtors with liabilities on educational loans. As the court in *Feenstra* pointed out:

> even though the abusive filing [by students] may have been what spurred Congress' action, the statute itself gave all guaranteed educational loans special treatment in bankruptcy.

*Feenstra*, 51 B.R. at 111.

Second, the legislative history of section 523(a)(8) does not express a clear intent to exempt co-makers from the exception to discharge. Co-makers are mentioned only a few times—twice to note that co-makers are normally not required, and once to note

that on some occasions co-makers are prohibited. *See* H.R.Rep. No. 95–595, 98th Cong., 2d Sess. 133, 136 and 154, reprinted in 1978 U.S. Code Cong. & Ad.News 5787, 6094, 6097 and 6115. "Absent a clearly expressed legislative intention to the contrary, the [statutory] language must ordinarily be regarded as conclusive." *Consumer Product Safety Commission v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). The language of section 523(a)(8) is broad in scope, and the exceptions to it are carefully delineated in subsections (A) and (B). This language must be regarded as the best evidence of Congressional intentions toward co-makers in the absence of any clearly expressed legislative intent to the contrary.

■ While it is true that section 523(a)(8) runs counter to the general "fresh start" philosophy of the Bankruptcy Code, the same could be said of any exception to discharge. The exceptions to discharge exist because Congress felt that other public policies outweighed the debtor's need for a fresh start. Although exceptions to discharge are to be construed narrowly, that approach to construction is not a suitable basis for a court to override the plain language of the statute creating the exception.

■ Barth's obligation on the note to WHEC was not discharged in 1985, because it fell within the scope of the section 523(a)(8) exception to discharge. That exception is self-executing, falling as it does outside the purview of section 523(c). The obligation was for an educational loan made under the auspices of a federal program designed specifically to help students finance their education. The note itself specified that loan proceeds were to be spent only on educational expenses, and was guaranteed by a governmental unit. WHEC did not violate the injunction of section 524(a)(2) when it commenced civil action against the debtor, because her debt

---

1. In 1982, when the loan was made, WHEC was a state agency. At this time, WHEC is no longer a state agency. Its current status is unclear, since it now appears to be a private non-profit corporation. This may pose interesting questions of interpretation in the future, but does not influence the decision in this case.

to WHEC was excepted from discharge under section 523(a)(8). Judgment dismissing the complaint may be entered accordingly.