In re Edward HAWKINS, Geraldine Hawkins, Debtors.

Edward HAWKINS, Plaintiff,

v.

CHASE MANHATTAN BANK, Defendant.

Bankruptcy No. 90–0151.

Related No. 90–00226.

United States Bankruptcy Court, N.D. Ohio, W.D.

July 3, 1991.

John L. Jacobson, Toledo, Ohio, for plaintiff.

John P. Korn, Toledo, Ohio, for defendant.

## MEMORANDUM OPINION AND ORDER

RICHARD L. SPEER, Bankruptcy Judge.

This cause comes before the Court after Trial on Complaint to Determine Dischargeability of Debt. At the Trial, the parties determined that the matter could be decided on the pleadings. Both parties submitted post-trial briefs. The Court has reviewed the post-trial briefs, as well as the entire record in this case. Based upon that review, and for the following reasons, the Court finds that Four Thousand Dollars ($4,000.00) of the Eleven Thousand One Hundred Fifty-nine Dollar ($11,159.00) debt should be non-dischargeable.

## FACTS

On January 25, 1990, Edward and Geraldine Hawkins filed for Bankruptcy under Chapter 7 of the Bankruptcy Code. Between the years 1987 and 1989, Edward Hawkins (hereinafter "Hawkins"), the Debtor/Plaintiff, obtained loans from Chase Manhattan Bank (hereinafter "CMB"), the Defendant, totalling Eleven Thousand One Hundred Fifty-nine Dollars ($11,159.00). These loans were characterized as "parent" educational loans as opposed to "student" educational loans. The Plaintiff filed the Complaint requesting that these loans be declared dischargeable.

As the matter could not be settled, a Trial date was set and later vacated so the parties could file Motions for Summary Judgment. The parties entered into the following stipulations:

1. Hawkins is in good health.

2. Hawkins supports one minor child, as well as his wife.

3. Hawkins has been licensed to sell real estate since 1964; and has been licensed to sell insurance since 1990.

4. For the last three (3) years, Hawkins' net earnings did not exceed Five Thousand Dollars ($5,000.00) due to business expenses and losses.

5. Hawkins listed his annual income at Twelve Thousand Seven Hundred Fifty Dollars ($12,750.00) on his petition.

6. The Plaintiff's expenses are the same as those listed in his petition and schedules.

7. At the time the first of three student loans was applied for, Hawkins was in debt for over Two Hundred Thousand Dollars ($200,000.00).

8. Hawkins is not the student for whom the funds were loaned.

9. The loan in question is one issued by a governmental unit as defined by the Bankruptcy Code.

10. Within Sixty (60) days of filing, the Debtor applied for and received Four Thousand Dollars ($4,000.00) in loan proceeds.

## LAW

The Debtor seeks to have his parent loan discharged under Section 523(a)(8)(B) of the Bankruptcy Code, which states:

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

(8) for an educational loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or a nonprofit institution, unless—

(B) excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents.

11 U.S.C. § 523(a)(8)(B).

Two issues are before the Court: (1) whether the loan incurred for educational purposes by the Debtor who is a non-student can be dischargeable; and, if so, (2) whether the repayment of the student loan would be an "undue hardship" on the Debtor.

■ As to issue one, the Debtor contends that Section 523(a)(8) does not apply to him as the loan proceeds were not used to further his education, but rather the education of his daughter. The Debtor argues that the legislative history indicates that Section 523(a)(8) was intended to prevent students from discharging their loans, while maintaining the benefits of the education, and was not intended to prevent a non-student debtor from having the loan discharged.

■ The Court, having been presented with a statute, must apply that statute to the situation at hand. If a statute's language is unambiguous, in the absence of a clearly expressed legislative intent to the contrary, that language ordinarily must be regarded as conclusive. *In re Sam A. Tisci, Inc.,* 124 B.R. 42, 44 (Bkrtcy. N.D.Ohio 1990); *United States v. Turkette,* 452 U.S. 576, 580, 101 S.Ct. 2524, 2527, 69 L.Ed.2d 246, 252–53 (1981). On its face, Section 523(a)(8) is clear and unambiguous. That section addresses itself to educational loans guaranteed by a governmental unit. In the present case, the Debtor applied the

proceeds of the loan to his daughter's education costs. The parties stipulated that the loan was guaranteed by a governmental agency within the definition of the Bankruptcy Code. Clearly, the loan in question falls within the plain meaning of the statute. Therefore, the debt is excepted from discharge under Section 523(a)(8)(B).

The Debtor claims that Congress intended to except "student" educational loans, but not "parental" educational loans, from discharge. The Court somewhat agrees with this premise as legislative history reflects that the sponsors of Section 523(a)(8) thought it was unjust for a student's educational loan to be discharged by filing bankruptcy shortly after graduation. However, the Court also observes that legislative history indicates that Section 523(a)(8) was enacted to preserve the financial integrity of educational loan programs. The legislative history offers no basis for not enforcing the literal language of Section 523(a)(8) to bar the discharge of educational loans signed by a student's parent. *See* 124 Cong.Rec. 1791–98 (1978). If non-student educational loans signed by the student's parent were allowed to be discharged in this manner, then before long many students would have their parents obtain their educational loans, and have the parents file for bankruptcy shortly thereafter. This would create a legal loophole which was not intended by Congress. By not excepting from discharge *all* educational loans which fall under the guise of Section 523(a)(8), the integrity of the educational loan programs would remain secure.

Having found that Section 523(a)(8) does apply to the Debtor's loan, the next issue is whether the debt should be discharged for undue hardship.

■ Neither Section 523(a)(8), nor the legislative history provides a clear test for what constitutes undue hardship. The case law, however, has identified three tests to be applied in determining if the facts and circumstances of a particular case will satisfy the undue hardship standard. *See, In re Conner,* 89 B.R. 744, 747 (Bkrtcy. N.D.Ill.1988). The first test is a mechanical one under which the Court compares a debtor's present and projected future income and expenses and surrounding circumstances to determine whether it is reasonable to require that the loan be repaid in whole or in part. *See, In re Andrews,* 661 F.2d 702 (8th Cir.1981); *In re Love,* 33 B.R. 753 (Bkrtcy.E.D.Va.1983). The second test is a good faith test where the Court inquires as to whether the debtor has made a good faith effort to begin repayment of the loan, to renegotiate the loan, and to minimize expenses and perhaps find a better paying job. *See, In re Holzer,* 33 B.R. 627 (Bkrtcy.S.D.N.Y.1983). In the third test, the Court examines whether or not the discharge of all or part of the student loan obligation would frustrate the Congressional policy underlying Section 523(a)(8). *See, In re Price,* 25 B.R. 256 (Bkrtcy.W.D.Mo.1982).

■ The Court will examine this case under all three tests in determining the dischargeability of this particular loan obligation. Turning to the first test, it appears that the Debtor's present, and probable future income, when viewed in light of his reasonable expenses, will not allow repayment of the entire loan. Hawkins' current income is low and he is supporting one minor child. However, his prospects for a significant improvement in his financial circumstances are good as he is in good health and has both a license to sell insurance and a license to sell real estate. Accordingly, under the first test, the Court would allow Seven Thousand One Hundred Fifty-nine Dollars ($7,159.00) to be discharged.

The second test focuses on the "good faith" of the debtor. In the case at bar, unsubstantiated allegations were made that the Debtor's loan payments were current. These allegations are not sufficient enough for the Court to make a finding. CMB asserts that good faith is lacking on the part of the Debtor because at the time of applying for the first loan in 1987, the Debtor was indebted for over Two Hundred Fifty Thousand Dollars ($250,000.00). The Debtor stipulated that his income was

Five Thousand Dollars ($5,000.00) for the past three years, and yet sixty days prior to filing, the Debtor undertook an additional loan obligation for Four Thousand Dollars ($4,000.00). The Debtor should have known that he was beyond his financial means and, consequently, should not have undertaken an additional burden. The "good faith" test would favor finding the student loan obligation nondischargeable based upon the stipulated income and the amount of indebtedness at the time of applying for the loans.

Finally, under the third test, the Debtor's circumstances must be examined in the context of the policies which courts have found relevant to the dischargeability of student loans. The logic of these policies has been questioned, and their usefulness may be limited, but the Court will nevertheless analyze the Debtor's case under the policy test criteria. *See, In re Conner*, 89 B.R. 744, 749 n. 20 (Bkrtcy.N.D.Ill.1988). In applying the policy test, courts have looked at what percentage of a debtor's overall debt is based on student loans, and to what extent the debtor is likely to benefit financially from the education financed by the loans. Here, the educational loans are not the primary reason for the Debtor's filing. The Debtor's Eleven Thousand One Hundred Fifty-nine Dollar ($11,159.00) debt to CMB is only Four Percent of the total Three Hundred Thirty-five Thousand Thirty-four Dollars ($335,034.00) of debt listed in the petition. As for the second part of the test, it does not appear that the Debtor will receive any future financial benefits as the loan was for his daughter. Thus, pursuant to the "policy" test, which the Court will give only limited weight, there are no policy reason which should alter the Court's determination of dischargeability based on the first two tests.

Based upon the equities in this case, the Court finds that all but Four Thousand Dollars ($4,000.00) should be dischargeable as constituting an "undue hardship" under Section 523(a)(8).

In reaching these conclusions, the Court has considered all the evidence and arguments of counsel, regardless of whether or not they are specifically referred to in this opinion.

Accordingly, it is

ORDERED that Four Thousand Dollars ($4,000.00) of the Debtor's educational loans be, and is hereby, nondischargeable under Section 523(a)(8).

It is FURTHER ORDERED that all of the remainder of the Debtor's educational loans and all interest are hereby held to be dischargeable under Section 523(a)(8).