**In re Virginia M. PELKOWSKI a/k/a Virginia M. Dodd, Debtor, Appellant,**

**Ohio Student Loan Commission, The Loan Servicing Center, James K. McNamara, Esq., Trustee.**

**No. 92–3309.**

United States Court of Appeals, Third Circuit.

Argued Dec. 15, 1992.

Decided March 24, 1993.

Gary H. Nash (argued), Yochim, Skiba, Moore & Nash, Erie, PA, for appellant.

Lee Fisher, Ohio Atty. Gen., Jay M. Patterson (argued), Asst. Atty. Gen., Columbus, OH, for appellee, Ohio Student Loan Comn.

Sydelle Pittas (argued), Powers & Hall, P.C., Boston, MA, for amicus-appellees The Education Resources Institute; Massachusetts Higher Educ. Assistance Corp.; Massachusetts Educ. Financing Auth.; and Pennsylvania Higher Educ. Assistance Agency.

Before SLOVITER, Chief Judge, GREENBERG, Circuit Judge, and POLLAK, District Judge.*

## OPINION OF THE COURT

SLOVITER, Chief Judge.

The issue before us, whether a non-student co-obligor of a guaranteed educational loan may be discharged from that debt in bankruptcy without proving one of the statutory exceptions, is one of first impression in the courts of appeals. Over the last ten years, the bankruptcy courts have divided on this issue,[1] although the three district courts to have considered it have decided against discharge.[2]

### I.

### Facts and Procedural History

The relevant facts were stipulated in the bankruptcy court. Appellant Virginia M. Pelkowski, a/k/a Virginia M. Dodd, filed a voluntary petition for Chapter 7 bankruptcy and listed among her debts seven loans guaranteed by the Ohio Student Loan Commission for the educational expenses of her children, Christine and Michael. Pelkowski filed a complaint against the Loan Commission to determine dischargeability of the seven loan debts under Bankr.Rule 4007 and 11 U.S.C. § 523(a)(8) (1988).

Pelkowski signed six of the notes as co-maker, four with Christine and two with Michael.[3] As of April 23, 1991, Pelkowski's

---

\* The Honorable Louis H. Pollak, Senior Judge of the United States District Court for the Eastern District of Pennsylvania, sitting by designation.

1. *Compare In re Dull,* 144 B.R. 370 (Bankr. N.D.Ohio 1992); *In re Hawkins,* 139 B.R. 651 (Bankr.N.D.Ohio 1991); *In re Martin,* 119 B.R. 259 (Bankr.E.D.Okla.1990); *In re Hudak,* 113 B.R. 923 (Bankr.W.D.Pa.1990); *In re Taylor,* 95 B.R. 550 (Bankr.E.D.Tenn.1989); *In re Hammarstrom,* 95 B.R. 160 (Bankr.N.D.Cal.1989); *In re Barth,* 86 B.R. 146 (Bankr.W.D.Wis.1988); *In re Feenstra,* 51 B.R. 107 (Bankr.W.D.N.Y.1985) (all holding such debt nondischargeable) *with In re Kirkish,* 144 B.R. 367 (Bankr.W.D.Mich. 1992); *In re Behr,* 80 B.R. 124 (Bankr.N.D.Iowa

1987); *In re Meier,* 85 B.R. 805 (Bankr.W.D.Wis. 1986); *In re Zobel,* 80 B.R. 950 (Bankr.N.D.Ohio 1986); *In re Bawden,* 55 B.R. 459 (Bankr. M.D.Ala.1985); *In re Washington,* 41 B.R. 211 (Bankr.E.D.Va.1984); *In re Boylen,* 29 B.R. 924 (Bankr.N.D.Ohio 1983) (all holding such debt dischargeable).

2. *See In re Wilcon,* 143 B.R. 4 (D.Mass.1992); *In re Varma,* 149 B.R. 817 (N.D.Tex.1992); *In re Selmonosky,* No. 1:89–CV–251–HTW (N.D.Ga. filed May 18, 1989) (unreported decision).

3. Harold P. Dodd, to whom Pelkowski was then married, also signed as co-maker on two loans

liability was $7,163.74 plus 9% interest on the loans for Christine's educational expenses and $3,817.12 plus 9% interest on the loans for Michael's educational expenses.

The bankruptcy court ordered the debts discharged. 135 B.R. 254 (Bankr.W.D.Pa. 1992). The court held that 11 U.S.C. § 523(a)(8), the statutory provision limiting dischargeability of debts for certain educational loans, was inapplicable to non-student co-makers of notes for such loans. Thus, Pelkowski was not required to prove either of the exceptions to nondischargeability, i.e., that the loan came due more than five (now seven) years before she filed the bankruptcy petition, 11 U.S.C. § 523(a)(8)(A), or that nondischarge of the debt would create "undue hardship" for her and her dependents, *id.* § 523(a)(8)(B). The bankruptcy court acknowledged that there was a split of authority, but chose to follow cases such as *In re Boylen,* 29 B.R. 924, 926–27 (Bankr.N.D.Ohio 1983), which held that section 523(a)(8) was intended to apply only to student obligors. The Loan Commission appealed.

The district court reversed. It distinguished *Boylen,* treating as dictum the *Boylen* court's discussion of the applicability of section 523(a)(8) to non-student co-makers of loan notes. Instead, the district court agreed with the majority of recent bankruptcy court decisions which held that section 523(a)(8) applies equally to non-student co-makers and student makers. *See* cases cited note 1 *supra.* In view of the parties' stipulation in the bankruptcy court that Pelkowski could not meet either of the statutory exceptions to discharge, the district court held that the six loan debts were nondischargeable.

for Christine's expenses and one for Michael's. Pelkowski and Dodd were divorced on April 1, 1985, and Dodd is not a party to this case. Because neither the bankruptcy court nor the district court distinguished between notes on which Pelkowski was the sole co-maker with the student and notes on which both Pelkowski and Dodd were joint co-makers with the student, we assume the distinction was viewed as irrelevant. Neither party argues otherwise and thus we do not address the issue.

There was a seventh note which Pelkowski signed as sole maker for the educational expenses of Christine. The bankruptcy court, relying on *In re Hudak,* 113 B.R. 923 (Bankr.W.D.Pa.1990), held that Pelkowski's debt as sole maker was nondischargeable and ordered the debt of $1,388.89 plus 12% interest not discharged. Pelkowski apparently conceded this issue and did not appeal the order of nondischargeability of that debt to the district court, nor does she challenge that holding here.

Pelkowski appeals the order holding nondischargeable the six loans on which she served as co-obligor. We have jurisdiction under 28 U.S.C. § 158(d) (1988). As this case turns on the interpretation of a provision of the Bankruptcy Code, our review is plenary. *In re Roth Am., Inc.,* 975 F.2d 949, 952 (3d Cir.1992).[4]

## II.

### *Discussion*

#### A.

The Guaranteed Student Loan Program (hereafter Program), which was established as part of the comprehensive Higher Education Act of 1965, was designed to ensure that colleges and students attending colleges would have reasonable access to low interest rate loans. S.Rep. No. 673, 89th Cong., 1st Sess. (1965), *reprinted in* 1965 U.S.C.C.A.N. 4027, 4030. Under the Program, educational loans from banks, credit unions, educational institutions, and other lenders are insured by the United States Department of Education or by state agencies or nonprofit organizations and reinsured by the Department of Education. 20 U.S.C. §§ 1078, 1084, 1085(d) (1988); *see* H.R.Rep. No. 595, 95th Cong., 2d Sess. 135, 140 (1977), *reprinted in* 1978 U.S.C.C.A.N.

**4.** A brief of *amici curiae* urging affirmance of the order of the district court has been filed by The Education Resources Institute, Inc., Massachusetts Educational Financing Authority, Massachusetts Higher Education Corporation, and Pennsylvania Higher Education Assistance Agency, all of which are nonprofit or governmental organizations that assist in education financing or in the administration of federal loan guarantee programs.

5787, 5963, 6096, 6101. If the borrower fails to make repayments because of death or disability, or is relieved of the obligation to pay through discharge in bankruptcy, the lender is entitled to repayment from the federal government. 20 U.S.C. § 1087; *see* H.R.Rep. No. 595, at 135, 140, *reprinted in* 1978 U.S.C.C.A.N. at 6096, 6101.

Initially, loans made under the Program were fully dischargeable in bankruptcy. A major change in this regard was effected by the Bankruptcy Reform Act of 1978 which severely restricted dischargeability of student loans.[5] That provision, section 523(a)(8), in the form applicable to Pelkowski, reads:

> (a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—
>
> . . . . .
>
> (8) for an educational loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or a nonprofit institution of higher education, unless—
>
> (A) such loan first became due before five years (exclusive of any applicable suspension of the repayment period) before the date of the filing of the petition; or
>
> (B) excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents;

. . . .

11 U.S.C. § 523(a)(8) (1988).[6]

The parties stipulated in the bankruptcy court that the Ohio Student Loan Commission is a "governmental unit" and thus the loan program is within the statute. The parties also stipulated that payment on Pelkowski's seven loans did not come due more than five (or seven) years before she filed for bankruptcy, and that excepting the debts from discharge would not create "undue hardship" for her and her dependents. Thus the appeal turns only on whether Pelkowski's debt as co-maker on the notes signed for loans for her children's education falls within section 523(a)(8).

### B.

Pelkowski first suggests that because she is not a student, the statute does not apply to her. Apparently Pelkowski seeks to distinguish between signatories to the loan who receive the educational benefits and those who do not, and to argue that only the former are covered by the provision making such debts nondischargeable. Some courts have made a similar distinction, holding that an "educational loan" includes only the debt incurred by the student for his or her own education. *See, e.g., In re Washington,* 41 B.R. 211, 214 (Bankr.E.D.Va.1984) (student loan "is only an 'educational loan' as to that party that received the benefits of the loan"). *But see In re Martin,* 119 B.R. 259, 261

---

**5.** A nondischargeability provision was initially enacted as part of the Education Amendments of 1976 which added a new section 439A to the Higher Education Act of 1965. *See* Education Amendments of 1976, Pub.L. No. 94–482, § 127(a), 90 Stat. 2081, 2141 (codified at 20 U.S.C. § 1087–3 (1976)) (repealed 1978). That provision was repealed effective November 6, 1978, but was replaced by a similar provision in the Bankruptcy Reform Act of 1978, 11 U.S.C. § 523(a)(8), which became effective on October 1, 1979. *See* Pub.L. No. 95–598, §§ 317, 402(a) & (d), 92 Stat. 2549, 2678, 2682 (1978); *see also* text at page 742 *infra.* Most courts confronting claims of dischargeability of educational loan debts during the eleven-month gap that Congress had inadvertently created held the debts nondischargeable. *See, e.g., In re Williamson,* 665 F.2d 683, 685 (5th Cir.1982); *In re Adamo,* 619 F.2d 216, 219 (2d Cir.), *cert. denied,* 449 U.S.

843, 101 S.Ct. 125, 66 L.Ed.2d 52 (1980). The current section 523(a)(8) is broader in application than its predecessor in the Higher Education Act, including more types of educational loans within its reach. *Compare* 20 U.S.C. § 1087–3 (1976) (repealed 1978) (applying only to loans insured or guaranteed by a governmental unit) *with* 11 U.S.C. § 523(a)(8) (1988) (applying to loans made, insured, or guaranteed by a governmental unit).

**6.** Congress amended 11 U.S.C. § 523(a)(8) on November 29, 1990, with an effective date 180 days thereafter. Crime Control Act of 1990, Pub.L. No. 101–647, §§ 3621, 3631, 104 Stat. 4789, 4964–65, 4966. Among the amendments was the increase of the time interval in section 523(a)(8)(A) from five to seven years. Because the instant case was filed on January 14, 1991, that amendment is not applicable here.

(Bankr.E.D.Okla.1990) (debt is educational loan because "the obligation incurred by the [debtors] was for educational purposes, albeit for their son").

■ We find no support in the statutory language for any distinction based on the status of the borrower as student or as beneficiary of the education. Section 523(a)(8) does not refer to a "student debtor" but applies to limit discharge of any "individual debtor" from "any debt" for a covered educational loan. In the absence of clearly expressed contrary legislative intent, the statutory language must be regarded as conclusive. *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980); *United States v. Bey,* 736 F.2d 891, 893 (3d Cir.1984).

Like the other subsections of 11 U.S.C. § 523(a), section 523(a)(8) describes a particular kind of debt that is excepted from discharge. *See* 11 U.S.C. § 523(a)(1)–(8) (1988); *id.* § 523(a)(9)–(12) (Supp.III 1992). Examples are tax debts, excepted by subsection (1), and spousal and child support obligations, excepted by subsection (5). 11 U.S.C. § 523(a)(1), (a)(5); *cf. In re Roberts,* 149 B.R. 547 (C.D.Ill.1993) ("The focus of § 523(a)(8) is on the nature and character of the loan, not how the recipient actually spent the money."). We note that any suggestion that there is a statutory distinction based on the status of the obligor of the note is inconsistent with Pelkowski's own concession that the seventh note, for which she was the sole maker, cannot be discharged.

In any event, the language and structure of the statute reveal no intent to restrict its reach to student debtors for expenses for their own education. To the contrary, such exceptions to nondischargeability as exist are "carefully delineated in subsections (A) and (B)." *In re Barth,* 86 B.R. 146, 148 (Bankr.W.D.Wis.1988). Our rejection of

any limitation of section 523(a)(8) based on the beneficiary of the loan or the recipient of the education is consistent with the weight of authority. *See In re Wilcon,* 143 B.R. 4, 5 (D.Mass.1992) ("[t]he plain language of 11 U.S.C. § 523(a)(8) mandates that *any* debt incurred by *an individual debtor* for an educational loan … is nondischargeable"); *In re Varma,* 149 B.R. 817, 818 (N.D.Tex.1992) ("The relevant inquiry into the applicability of [section 523(a)(8)] is the purpose of the loan, not the beneficiary of the education."); *In re Selmonosky,* No. 1:89–CV–251–HTW, slip op. at 6 (N.D.Ga. filed May 18, 1989) (unreported decision) ("[section] 523(a)(8) applies to non-student debtors in addition to student debtors"); *In re Dull,* 144 B.R. 370, 372 (Bankr.N.D.Ohio 1992) ("the fact [that] a debtor received no educational benefit from the loans does not exclude him from [section 523(a)(8)'s] provisions"); *In re Hawkins,* 139 B.R. 651, 652–53 (Bankr. N.D.Ohio 1991); *Martin,* 119 B.R. at 261; *Hudak,* 113 B.R. at 924; *In re Taylor,* 95 B.R. 550, 552 (Bankr.E.D.Tenn.1989); *In re Hammarstrom,* 95 B.R. 160, 162 (Bankr. N.D.Cal.1989) ("The language of section 523(a)(8) does not limit its application to educational loans in which the student is the borrower."); *Barth,* 86 B.R. at 148; *In re Feenstra,* 51 B.R. 107, 110–11 (Bankr. W.D.N.Y.1985).

C.

■ Pelkowski's principal argument is that because she was only a co-maker of the six notes at issue here,[7] section 523(a)(8) does not apply. She reasons that because co-makers are not mentioned in section 523(a)(8), Congress intended to include only primary makers of notes within the statute's ambit. Pelkowski seeks to find a statutory ambiguity from the statute's silence. We see no reason to create

---

7. Pelkowski's appellate brief denominates her an "endorser[ ]" on the notes, apparently in an effort to show that she is only secondarily liable as a surety. *See Federal Deposit Ins. Corp. v. Blue Rock Shopping Ctr., Inc.,* 766 F.2d 744, 749 (3d Cir.1985). Copies of the notes are not in the record and thus we do not know, nor is it

relevant to the issue before us, whether Pelkowski is primarily or secondarily liable. *See Lee Fed. Credit Union v. Gussie,* 542 F.2d 887 (4th Cir.1976). We use the terms co-maker, co-signer, and co-obligor interchangeably, recognizing that there may be a distinction between these terms for other purposes.

an ambiguity. If Congress had intended that section 523(a)(8) not apply to non-student co-makers of educational loan debt, we assume that it would have so stated. *See, e.g., Consumer Prod. Safety Comm'n,* 447 U.S. at 109, 100 S.Ct. at 2056.

At oral argument, Pelkowski suggested that the statutory reference to an "individual" debtor supported her contention that the provision was designed to cover only an individual maker of the note. We believe it is evident that "individual" debtor is used in contradistinction to "corporate" debtor. *See Garrie v. James L. Gray, Inc.,* 912 F.2d 808, 812 (5th Cir.1990) (willful and malicious injury exception to discharge, like the other exceptions in 11 U.S.C. § 523, applies only to individual, not corporate, debtors), *cert. denied,* —— U.S. ——, 111 S.Ct. 1108, 113 L.Ed.2d 218 (1991). Although resort to the legislative history is therefore unnecessary to decide this case, our inquiry in that regard discloses no support for Pelkowski's position.

It is undisputed that section 523(a)(8) was enacted in response to the belief that students were taking advantage of the loan program. In the early 1970's, there was concern by legislators and the public about the perceived rise in bankruptcy filings by students on the brink of lucrative careers. *See* H.R.Doc. No. 137, 93d Cong., 1st Sess., Pts. I and II (1973), *reprinted in* App. 2 *Collier on Bankruptcy* § I, at 176–77 (Lawrence P. King, et al., eds., 15th ed. 1992) [hereinafter *Collier's*].

Soon thereafter, as part of the contemplated Education Amendments of 1976, the House Education and Labor Committee proposed to except educational loan debt from discharge in bankruptcy unless the debtor could show undue hardship or that the loan came due more than five years before the bankruptcy filing. H.R.Rep. No. 595, at 132, *reprinted in* 1978 U.S.C.C.A.N. at 6093. Although the nondischargeability provision was enacted as an amendment to the Higher Education Act of 1965, *see* note 5 *supra,* it was reconsidered by Congress shortly thereafter. There was opposition by the House Judiciary Committee and its Subcommittee on Civ-

il and Constitutional Rights to treating educational loan debt and student debtors differently than other debt and other debtors. *See* H.R.Rep. No. 595, at 132, *reprinted in* 1978 U.S.C.C.A.N. at 6093. For a more detailed history of the legislation, see generally Jerome M. Organ, Note, *"Good Faith" and the Discharge of Educational Loans in Chapter 13: Forging a Judicial Consensus,* 38 Vand.L.Rev. 1087, 1093–100 (1985).

Nonetheless, during consideration of H.R. 8200 by the full House, which eventually culminated in the Bankruptcy Reform Act of 1978, Representative Ertel of Pennsylvania sponsored an amendment adding an educational loan nondischargeability provision, which quickly passed the House. *See* 124 Cong.Rec. 1791, 1798 (1978). This amendment was included in the Senate Bill, S. 2266, in substantially the same form. *See* 124 Cong.Rec. 33,992, 33,998.

There was little discussion of the nondischargeability provision either in the House or Senate. *See* S.Rep. No. 989, 95th Cong., 2d Sess. 79 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5865; 124 Cong.Rec. 28,284, 32,350–420, 34,143–45. On the Senate floor, Senator DeConcini reviewed the provisions of the bankruptcy bill, including this section, but did not discuss its purpose. 124 Cong.Rec. 33,992, 33,998. Thus, the principal indication of legislative intent can be discerned from statements made by the House supporters of the provision.

Representative Ertel stated that the purpose of the provision was

> to keep our student loan programs intact.... [T]he default rate in the student loan program has been escalating to tremendous proportions in the past year.... [T]he number of students going into bankruptcy—or ex-students—has increased....
>
>    ....
>
> ... Without this amendment, we are discriminating against future students, because there will be no funds available for them to get an education.

124 Cong.Rec. 1791–92.

█ There were similar statements by other House members. Representative

Mottl stated, "[t]here has been in the last few years a dramatic upswing in the number of student loan bankruptcies." *Id.* at 1792. Representative Erlenborn criticized debtors who,

> not having assets to pledge, [are] pledg[ing their] future earning power. Having pledged that future earning power, if, shortly after graduation and before having an opportunity to get assets to repay the debt, [they] seek[ ] to discharge that obligation, I say that is tantamount to fraud.

*Id.* at 1793. Although he also remarked that "nothing in the provision ... prohibits the discharge of the non-student loan debt," *id.* at 1795, it is clear from the context that he was referring to other debts of student debtors. In any event, even if his comment could be read as referring to non-student debtors, the Supreme Court has advised that the remarks of a single legislator are not controlling in analyzing legislative history. *Consumer Prod. Safety Comm'n,* 447 U.S. at 118, 100 S.Ct. at 2061. It is considerably more significant that the debate in the main focused on the twin goals of rescuing the student loan program from fiscal doom and preventing abuse of the bankruptcy process by undeserving debtors. *See generally* 124 Cong.Rec. 1791–98; H.R.Rep. No. 595, at 132–62, *reprinted in* 1978 U.S.C.C.A.N. at 6093–123.

 We therefore agree with the Sixth Circuit, which concluded that "Congress enacted 11 U.S.C. § 523(a)(8) in an effort to prevent abuses in and protect the solvency of the educational loan programs." *In re Merchant,* 958 F.2d 738, 742 (6th Cir.1992) (holding that educational bank loans guaranteed by private educational institutions and extensions of credit by such institutions are not dischargeable).

Pelkowski argues that because this legislative history shows that Congress was seeking to prevent recent graduates from discharging their loan commitments in bankruptcy before becoming wage-earning members of the community, the provision is inapplicable to co-signers like herself who are not students and who therefore cannot abuse the loan program in this manner. Similar reasoning was adopted by those bankruptcy courts which held that non-student co-makers of educational loans are not covered by section 523(a)(8). *See In re Kirkish,* 144 B.R. 367, 369 (Bankr. W.D.Mich.1992); *In re Behr,* 80 B.R. 124, 126–27 (Bankr.N.D.Iowa 1987); *In re Meier,* 85 B.R. 805, 806–07 (Bankr.W.D.Wis. 1986); *In re Zobel,* 80 B.R. 950, 951–52 (Bankr.N.D.Iowa 1986); *In re Bawden,* 55 B.R. 459, 461 (Bankr.M.D.Ala.1985); *Washington,* 41 B.R. at 214; *Boylen,* 29 B.R. at 926–27.

The Loan Commission and the *amici* read the legislative history differently. They point out that the statute was amended on several occasions, always to expand its coverage, demonstrating congressional intent to make the discharge of educational loan debt more difficult for all debtors. Thus, for example, recently Congress lengthened the time interval before an educational loan can become dischargeable from five to seven years. *See* note 6 *supra.* Although Pelkowski contends, and the bankruptcy court in this case agreed, that the time limitation for discharge is inapposite to a middle-aged parent co-maker with other debts, we find this argument unpersuasive. Patently, an unrepaid loan will adversely affect the financial integrity of the educational loan program equally whether the defaulting debtor is the student or the student's co-obligor.

Pelkowski argues that Congress could not have intended section 523(a)(8) to restrict dischargeability of educational loan debts by a debtor co-signer because there were relatively few such co-signers in 1978 when the statute was enacted. The most this argument proves, even if the factual predicate is true, is that Congress gave little or no thought to the effect of the nondischargeability provision on non-student co-signers.

The absence of clear congressional intent to include co-signers does not resolve the question in Pelkowski's favor. The Supreme Court has cautioned against reading "much into nothing. Congress cannot be expected to specifically address each issue

of statutory construction which may arise." *Albernaz v. United States,* 450 U.S. 333, 341, 101 S.Ct. 1137, 1143, 67 L.Ed.2d 275 (1981); *see United States v. Standefer,* 610 F.2d 1076, 1084 (3d Cir.1979) (in banc), *aff'd,* 447 U.S. 10, 100 S.Ct. 1999, 64 L.Ed.2d 689 (1980). In section 523(a)(8), Congress has enacted a provision to except from discharge "any debt ... for an educational loan." The legislative history reveals a clear congressional intent to prevent debtor abuse of the Program and depletion of the Program's resources. This is a case in which

> the insistence on ... an affirmative expression of intent in the course of legislative hearings or in the body of a legislative report would more likely have the effect of undermining congressional authority rather than respecting Congress' desires.

*Standefer,* 610 F.2d at 1083. In our view, the "overall policy" of the statute "can only be served by rendering all such loans as nondischargeable." *Martin,* 119 B.R. at 261.

Neither Pelkowski nor any of the bankruptcy courts adopting the position she advocates have explained why section 523(a)(8) applies to prevent discharge of a non-student's debt when the non-student is the sole obligor, which has been the uniform holding of every court to have considered the issue, *see Hawkins,* 139 B.R. at 653 (section 523(a)(8) applies where non-student is sole maker); *Hudak,* 113 B.R. at 924 (same); *Hammarstrom,* 95 B.R. at 162 (same); *Feenstra,* 51 B.R. at 110–11 (same); *see also Varma,* 149 B.R. at 818 (two non-student makers); *Selmonosky,* No. 1:89–CV–251–HTW, slip op. at 5–6 (same); *Martin,* 119 B.R. at 261 (same), yet does not apply if the student has also signed the note. Because no court has discussed a situation like Pelkowski's, in which the non-student debtor is obligor on one note and co-obligor on others, the evident inconsistency in that position has never previously been addressed.

The congressional intent to eliminate debtor abuse of the educational loan program would apply both to single makers of loan notes and to co-makers, whether students or their parents or other co-signers, as all may abuse the bankruptcy system or take advantage of legal loopholes. *Hawkins,* 139 B.R. at 653; *Feenstra,* 51 B.R. at 110. Moreover, as some bankruptcy courts have recognized, limiting the circumstances under which student loan obligations can be discharged in bankruptcy helps preserve the financial integrity of the student loan program, *see, e.g., Dull,* 144 B.R. at 372; *Hawkins,* 139 B.R. at 653; *Hudak,* 113 B.R. at 924; *Hammarstrom,* 95 B.R. at 164, the other clearly expressed legislative concern. Even though the debt of the student co-signer would remain outstanding notwithstanding the co-signer's discharge, *see Bawden,* 55 B.R. at 462 (although mother's debt as endorser dischargeable, "[w]ere the daughter to file [for] bankruptcy, the debt would be nondischargeable as to her"), releasing co-signers could likely, if not necessarily, affect the economic viability of the student loan program. After all, the lenders seek the security of a non-student co-signer precisely because there is a commercial risk in looking only to the student for credit assurance.

In the end, Pelkowski's position, which finds support in neither the statutory language nor the legislative history, rests upon the argument that the Loan Commission's interpretation of the statute runs counter to the purposes of the Bankruptcy Code to release an honest debtor from financial burdens and to facilitate the debtor's unencumbered "fresh start." *Kokoszka v. Belford,* 417 U.S. 642, 645–46, 94 S.Ct. 2431, 2433–34, 41 L.Ed.2d 374 (1974). She refers to section 727 of the Code, which provides that a court "shall grant" the debtor a discharge unless certain enumerated grounds are shown, such as fraud or other deceit on the debtor's part. *See* 11 U.S.C. § 727 (1988).

Admittedly, it is well accepted that exceptions to discharge, which reflect a congressional determination that other public policies outweigh the debtor's need for a fresh start, should be narrowly construed against the creditor and in favor of the debtor. *In re Decker,* 595 F.2d 185, 187 (3d Cir.1979); *see also 3 Collier's* ¶ 523.-05A, at 19 ("Any other construction would be inconsistent with the liberal spirit that

has always pervaded the entire bankruptcy system."). However, in the case of section 523(a)(8), Congress has revealed an intent to limit the dischargeability of educational loan debt, and we can construe the provision no more narrowly than the language and legislative history allow. *Cf. Johnson v. Edinboro State College*, 728 F.2d 163, 164 (3d Cir.1984) (fresh start is only one of several policies underlying the Bankruptcy Code); *Barth*, 86 B.R. at 149 ("While it is true that section 523(a)(8) runs counter to the general 'fresh start' philosophy of the Bankruptcy Code, the same could be said of any exception to discharge.").

We are persuaded that section 523(a)(8) applies to a co-signer of a note for the educational expenses of another person, and that the district court correctly found Pelkowski's debts nondischargeable.

### III.

*Conclusion*

For the foregoing reasons, we will affirm the order of the district court.