In re David VAN ESS, Debtor.

**SETON HALL UNIVERSITY, Plaintiff,**

v.

**David T. VAN ESS, Defendant.**

**Bankruptcy No. 93–2246.**

United States Bankruptcy Court,
D. New Jersey.

May 19, 1994.

---

Susan K. Straub, Whipple, Ross & Hirsh, P.C., Parsippany, NJ, for Seton Hall University.

John O. Goins, Goins & Goins, Union, NJ, for David T. Van Ess.

## DECISION

NOVALYN L. WINFIELD, Bankruptcy Judge.

Pursuant to 11 U.S.C. § 523(a)(8), Seton Hall University seeks to except from discharge the debt allegedly incurred by the Debtor, David T. Van Ess. The Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I). Venue in this case is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The following constitutes the Court's findings of fact and conclusions of law as required by Bankruptcy Rule § 7052.

## STATEMENT OF FACTS

On or about March 1, 1993, David T. Van Ess ("Debtor") filed a voluntary petition seeking relief under Chapter 7 of the Bankruptcy Code. On April 26, 1993, Seton Hall University ("SHU") filed a Complaint to Determine the Dischargeability of Debt claiming that it made an educational loan to the Debtor in the amount of $5,774.00 for the purpose of attending law school during the Fall 1990 semester. The Debtor did not answer the complaint and on August 8, 1993 default was entered. On November 18, 1993 a proof hearing was held at which the Debtor appeared with counsel, although he had not filed any responsive papers in connection with the proof hearing. The court queried both counsel as to the applicability of § 523(a)(8) to the debt in question and invited both counsel to submit briefs. On the adjourned return date, January 5, 1994, the court took the matter under advisement.

The Debtor attended classes at Seton Hall University Law School during the Fall 1989 and Spring 1990 semesters, for which his tuition was paid in full. The Debtor registered for the Fall 1990 semester, and attended some classes, but did not pay the Fall 1990 tuition.

There is some dispute between the parties with respect to the duration of the Debtor's class attendance. SHU observes that the Debtor's transcript for Fall, 1990 semester shows that he received a passing grade for an Appellate Advocacy course, and infers that the debtor must have attended classes for more than a few days. (Pl's. Br. at 9.) SHU also produces a letter dated October 17, 1990 from the SHU law school registrar, Gary Bavero, to the Debtor which states:

This is to confirm that the following action is being taken as the result of your meeting with Dean Zimmer and myself on Monday, October 15, 1990.

1. Your classification for the Fall 1990 semester will be changed from full-time to part-time.

2. You must withdraw from the course in Business Associations with Professor Blackburn.

I must remind you that the change to part-time status will affect when you may be eligible for graduation.

Pl's. Br. at 10.

The Debtor claims that he attended only three to four days of class for the semester. As to the Appellate Advocacy course, the Debtor speculates that his assigned partner completed all of the work, so that a passing grade was obtained. The extent of class attendance and the educational benefit received thereby remains unclear because it appears that the Debtor did not formally withdraw from school.

There is no indication that the Debtor participated in any student loan program sponsored by either SHU or any other entity. Nor does it appear that the Debtor and SHU entered into any written agreement which provided terms for the payment of the Fall, 1990 tuition. SHU contends that the Debtor's attendance at class and non-payment of tuition resulted in an educational benefit to the Debtor and an extension of credit by SHU so as to give rise to a nondischargeable debt under Code section 523(a)(8). As damages, SHU seeks the full semester tuition in the amount of $5,774.00, in addition to $1,923.00 for collection fees on the debt.

## DISCUSSION

The exception to the discharge of student loan debt under 11 U.S.C. § 523(a)(8) reads:

(a) A discharge ... does not discharge an individual debtor from any debt—

(8) for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend, unless—

(A) such loan, benefit, scholarship, or stipend overpayment first became due more than 7 years (exclusive of any applicable suspension of the repayment period) before the date of the filing of the petition; or

(B) excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependent; ....

11 U.S.C. § 523(a)(8).

SHU correctly observes that the terms educational benefit overpayment and educational loan are not defined in the Bankruptcy Code. It urges the court to broadly construe the meaning of the word "loan" to conclude that an educational loan has occurred in the matter before the court because the Debtor's nonpayment of tuition caused an extension of credit to the Debtor. Further, because extensions of credit by educational institutions to students have been found to constitute nondischargeable educational loans, *In re Merchant,* 958 F.2d 738, 742 (6th Cir.1992); *In re Hill,* 44 B.R. 645 (Bkrtcy.D.Mass.1984), the court should find that the Debtor's unpaid tuition bill is likewise nondischargeable. SHU also notes that § 523 has been recently amended to further extend its application more uniformly with respect to student loans. SHU argues that in light of Congress' intent to broaden the application of the statute, the debtor's nonpayment of tuition should be excepted from discharge like traditional student loans. SHU argues that both result in the receipt of an educational benefit by the student and payment is an expected condition of both transactions.

Alternatively, SHU asserts that even if the debt is not classified as an educational loan, it warrants exception from discharge as an "educational benefit" within the scope of § 523(a)(8). SHU summarily contends that the Debtor's nonpayment of tuition is a fact sufficient to satisfy the statutory provisions of § 523(a)(8). To this end, SHU urges the court to adopt the reasoning of *In re Najafi,* 154 B.R. 185 (Bkrtcy.E.D.Pa.1993) and its broad interpretation of an educational loan.

Generally, exceptions to discharge contained in 11 U.S.C. § 523(a) should be

narrowly construed against the creditor and in favor of the debtor in order to carry out the rehabilitative policy of the Bankruptcy Code. *In re Pelkowski,* 990 F.2d 737, 744 (3d Cir.1993). *See,* 3 Collier on Bankruptcy, ¶ 523.05A, at 19 (15th ed. 1993) ("Any other construction would be inconsistent with the liberal spirit that has always prevailed in the entire bankruptcy system."). The plaintiff carries the burden of proof under the preponderance standard which applies to all exceptions to discharge under 11 U.S.C. § 523(a). *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

■ The court believes that a common sense reading of 11 U.S.C. § 523(a)(8) reveals that the Debtor's nonpayment of his tuition bill did not result in an extension of credit by SHU which constitutes a nondischargeable educational loan. However, the construction of the statute requested by SHU makes a brief review of the legislative history both necessary and instructive.

To determine the meaning of a statute, the court must look "not only to the particular statutory language, but to the design of the statute as a whole and its object and policy." *United States ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Prudential Ins. Co.,* 944 F.2d 1149, 1155 (3rd Cir.1991) (quoting *Crandon v. United States,* 494 U.S. 152, 158, 110 S.Ct. 997, 1001, 108 L.Ed.2d 132 (1990)); *see also, F.T.C. v. University Health, Inc.,* 938 F.2d 1206, 1216 (11th Cir.1991) (to interpret statutory section, it is best to refer to the overall statutory scheme).

The Higher Education Act of 1965 established the Guaranteed Student Loan Program to assure that colleges and students attending colleges would have reasonable access to low interest rate loans. S.Rep. No. 673, 89th Cong., 1st Sess. (1965), reprinted in 1965 U.S.C.C.A.N. 4027, 4030. The section of the Bankruptcy Act which addressed the dischargeability of debts did not treat the dischargeability of these educational loans. When Congress undertook revision of the bankruptcy laws in 1978 an amendment was sponsored to include a nondischargeability provision for educational loans in the revised statute. *In re Palmer,* 153 B.R. 888, 893 (Bkrtcy.D.S.D.1993).

Section 523(a)(8) of the Bankruptcy Code was enacted in response to the perceived abuse of the loan program by students who declared bankruptcy and discharged student loan debt on the threshold of lucrative careers. *See* H.R.Doc. No. 137, 93d Cong., 1st Sess., Pts. I and II (1973), *reprinted in* App. 2 *Collier on Bankruptcy* § I, at 176–177 (Lawrence P. King, et al., eds., 15th ed. 1993).

Since its enactment, the scope of § 523(a)(8) has been broadened by amendments, most recently in 1990 by the Crime Control Act. The original enactment covered obligations to a governmental unit, or a nonprofit institution of higher education, for an educational loan. Bankruptcy Reform Act of 1978, Pub.L. No. 95–598, § 523(a)(8), 92 Stat. 2549 (1978). A subsequent amendment expanded the scope of educational loans covered by adding the language "made, insured, or guaranteed by a governmental unit or nonprofit institution of higher education." *See, In re Pilcher,* 149 B.R. 595 (9th Cir. BAP 1993). The Bankruptcy Amendment and Federal Judgeship Act of 1984 further expanded subsection 523(a)(8) by removing the phrase "of higher education" to eliminate the inference that the section only applied to nonprofit institutions associated with higher education. *Id.* Finally, the statute was amended by the Crime Control Act of 1990 to include educational benefit overpayments, made, insured or guaranteed by the government, and obligations to repay funds received as an educational benefit scholarship or stipend. *Id.*

The foregoing review amply demonstrates that in the sixteen years since its original enactment, § 523(a)(8) has been steadily expanded to insure that all manner of financial assistance that is government made, insured, or guaranteed, or that is made under a program funded by a nonprofit institution is now within the ambit of the subsection. This expansion of the subsection is completely consistent with the Congressional intent discerned by the court in *Pelkowski* "to prevent abuses in and protect the solvency of the educational loan programs." *Pelkowski,* 990 F.2d at 743 (citing *Merchant,* 958 F.2d at 742.)

Notably, however, by its plain language the subsection has not been expanded to include all financial obligations owed to educational institutions. Congress in its original enactment and through its subsequent modifications of § 523(a)(8) has manifested a specific concern for the financial integrity of educational loan programs undoubtedly because the fiscal burden of student default falls upon the federal government and thus, ultimately upon the taxpayers. Such a consequence is hardly equitable. The defaulting student is the one party who enjoys the benefits of the education obtained, the pool of funds available for other would-be students is potentially imperiled, and neither the taxpayers nor the other students are in a position to prevent the loss. Thus, the Congressional determination to except government made, insured, or guaranteed financial assistance from discharge is a sensible one.

By contrast, the debt owed to SHU for unpaid tuition in the instant case is materially indistinguishable from the medical doctors, hospitals and other creditors listed in the Debtor's schedules, who all provided goods or services and expected to be paid. There is no overriding policy that warrants treating SHU differently from any other creditor. Indeed, given the ready availability of student grants and loans, one might very well conclude that SHU is particularly well situated to avoid defaults on tuition obligations. Students who need financial aid may avail themselves of various government programs or university sponsored programs, and SHU need not permit students to attend class unless the tuition is paid. To read § 523(a)(8) as encompassing the mere nonpayment of tuition requires an overly broad reading of the statute and is unsupported by the legislative history.

Nor does the court find persuasive SHU's reliance on *In re Najafi*, 154 B.R. 185 (Bkrtcy.E.D.Pa.1993). Like the debtor before this court, Najafi registered and attended classes without having first paid tuition. It further appears that Najafi did so with the express permission of the college. Also like the debtor before this court, early in the semester Najafi ceased class attendance. He claimed that he had become ill, and that his relatives had notified the college of his illness. Najafi was not able to produce any documentation evidencing notification to the college of his illness. At the end of the semester the college billed him for the full tuition.

Najafi later applied to another school, but was unable to obtain his transcripts because the college would not release them unless the unpaid tuition bill was satisfied. After the debtor filed his bankruptcy case, the college still refused to release the transcripts, and claimed that the tuition bill was a nondischargeable debt pursuant to section 523(a)(8).

The court in *Najafi* first examined cases which interpreted the term "educational loan" under the version of the statute that existed before the 1990 amendments. *See, In re Shipman*, 33 B.R. 80 (Bkrtcy.W.D.Mo. 1983); *In re Hill*, 44 B.R. 645 (Bkrtcy. D.Mass.1984); *In re Ellenburg*, 89 B.R. 258 (Bkrtcy.N.D.Ga.1988); *In re Merchant*, 958 F.2d 738, 742 (6th Cir.1992). The court then applied this caselaw to its determination that the college had extended credit to the debtor and concluded that the weight of the authority supported a finding that under the previous version of the statute the credit extended by reason of Najafi's nonpayment of tuition was an educational loan. *Najafi*, 154 B.R. at 189. It further reasoned that since the definition of educational loan was even broader under the 1990 amendments the debt owed by Najafi should be deemed nondischargeable. *Id.* at 190.

As an additional basis for its decision the *Najafi* court also focused upon the language of the statute. In particular, the court examined that portion of the subsection which provides that a discharge under section 727 does not discharge a debt "for an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution. . . ." It found that "the absence of commas in the phrase 'educational benefit overpayment or loan made' makes this phrase difficult to interpret." *Id.* It concluded that the term "educational" should be read to modify the terms "benefit", "overpayment" and "loan". It rejected the debtor's

contention that the statute references a benefit overpayment. *Id.* From this construction the court found that the college had conferred an educational benefit upon Najafi for which he did not pay. As a result, the debt was found to be nondischargeable.

The reading of the clause proposed by the Najafi court is strained, and contrary to not only its plain language, but also the legislative history which manifests a congressional intent to except from discharge educational loans and related benefits that are made, insured, or guaranteed by a governmental unit or made pursuant to a program funded by a governmental unit or nonprofit institution. The clause as written does not require additional punctuation to make its meaning clear. As written, the clause encompasses both an educational benefit overpayment or loan. Further, by focusing solely on the terms "educational benefit" the *Najafi* court did not consider the requisites of the remainder of the clause that require that the educational benefit overpayment or loan be either (i) made, insured, or guaranteed by a governmental unit, or (ii) made under a program sponsored by a governmental unit or nonprofit institution. The phrase regarding the classification of the debt as "an educational benefit overpayment or loan" is not severable from the rest of the statute.

Nothing in the facts of *Najafi*, and nothing in the facts of the matter before this court indicates that any educational benefit overpayment or loan was made, insured, or guaranteed by a governmental unit. Nor does it appear from the facts of *Najafi* that the debtor was participating in a program funded by the college when he registered for courses in the fall of 1991. Rather, the debtor requested admission and, contrary to its usual policy, the college permitted him to register and attend classes without paying tuition. *Id.* at 188. Similarly, although the pleadings before the court do not indicate whether SHU expressly permitted the debtor to attend classes without payment of tuition, it appears that was precisely what occurred. Notably, however, there is no indication that either the debtor in *Najafi* or the debtor in the case before this court participated in any funded program which permitted attendance

at school without payment of the tuition. Rather, it appears that neither Najafi nor this debtor timely paid their tuition.

SHU's reliance on *Merchant* and *Hill* is unavailing since both courts excepted tuition debt from discharge because the debts were incurred as extensions of credit in connection with loan programs. In *Merchant,* the debtor and a bank entered into a formal loan agreement guaranteed by the university pursuant to a student loan program arranged with the university. Additionally, for assistance with other incidental educational expenses, the debtor signed promissory notes payable to the university. In its opening analysis of the general statutory requirements, the court addressed the existence of a student loan program. *Merchant,* 958 F.2d at 740. The court found that a student loan program existed between the university and the bank and that the "university's participation in the student loan program was crucial to the debtor's receiving money to fund a portion of her education." *Id.* Therefore, the debtor's obligations were not dischargeable pursuant to § 523(a)(8). In *Hill,* the court declared tuition debt nondischargeable where an extension of credit was granted by a nonprofit institution as "short term credit pending receipt of loan proceeds" from the federally guaranteed student loan program. *Hill,* 44 B.R. at 647. In reliance on debtor's application for a guaranteed student loan, the university extended the cost of tuition to the debtor as credit to be paid as soon as he received the proceeds of his student loan. The university's reliance established a connection to all of the statutory requirements, including the grant of the educational loan under the aegis of a loan program.

SHU argues that it is "unfair for the University to bear the burden of attempting to provide an education to students who do not attend class and do not bother to withdraw." (Pl's. Ltr. in Supp. of Br. at 2.) However, if Congress had intended the scope of § 523(a)(8) to include the simple nonpayment of tuition or any and all extensions of credit whether within or apart from an educational loan program, we assume that it would have so stated. *See generally, Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.,* 447

U.S. 102, 100 S.Ct. 2051, 64 L.Ed.2d 766 (1980). In this instance, the debt due to SHU for nonpayment of tuition is materially indistinguishable from debt that would be due to a family dentist for nonpayment of his bill. In a sense both creditors have extended credit by virtue of debtor's failure to pay. SHU has no greater remedy than that available to any other creditor who suffers from the nonpayment of his bill. SHU is not entitled to relief under 11 U.S.C. § 523(a)(8).

This case presented circumstances appropriate for *sua sponte* consideration of the complaint's merits. *See e.g., In re Brassard,* 162 B.R. 375, 377 (Bkrtcy.D.Me.1994). In consideration of the parties' legal memoranda, the court has assumed that all of the facts alleged in the complaint are true. *See, Commonwealth of P.A. ex rel. Zimmerman v. PepsiCo, Inc.,* 836 F.2d 173, 175 (3d Cir. 1988); *In re Garafano,* 99 B.R. 624, 627–628 (Bkrtcy.E.D.Pa.1989). Because the court finds that as a matter of law, the plaintiff, SHU, does not have a cause of action under section 523(a)(8) of the Bankruptcy Code, the complaint should be dismissed.

## CONCLUSION

For the reasons set forth in the foregoing opinion the court finds that the plaintiff, SHU, has failed to establish the applicability of Bankruptcy Code section 523(a)(8), and it hereby *sua sponte* dismisses the adversary proceeding for failure to state a cause of action pursuant to Bankruptcy Rule 7012 and Federal Rule of Civil Procedure 12(b)(6).

### ORDER DETERMINING DEBT TO BE DISCHARGEABLE AND DISMISSING COMPLAINT

This matter having come before the court upon its sua sponte motion to dismiss, the court having considered the briefs and argument of counsel and having rendered its written decision dated May 19, 1994,

IT IS, on this 19th day of May, 1994

ORDERED, that the debt owed by David T. Van Ess to Seton Hall University is determined to be dischargeable, and it is further

ORDERED, that the complaint is dismissed.