**In re John Gary BOYLEN and Lucille Boylen, fka Lucille Polino, Debtors.**

**John Gary BOYLEN and Lucille Boylen, Plaintiffs,**

v.

**FIRST NATIONAL BANK OF AKRON and Ohio Student Loan Commission, Defendants.**

**Bankruptcy No. 582–1573.**
**Adv. No. 582–0764.**

United States Bankruptcy Court,
N.D. Ohio.

May 16, 1983.

Carl Hirsch, Akron, Ohio, for debtors.

Edward D. Helvey, Columbus, Ohio for Ohio Student Loan Com'n.

## FINDING AS TO DISCHARGEABILITY OF DEBT

HAROLD F. WHITE, Bankruptcy Judge.

The debtors filed a complaint on October 14, 1982 to determine dischargeability of an educational loan pursuant to 523(a)(8)(B). First National Bank of Akron and the Ohio Student Loan Commission were made parties thereto. An answer was filed by the Ohio Student Loan Commission which is a general denial. First National Bank of Akron failed to file an answer although they were served.

At the trial it was indicated to the Court that the First National Bank of Akron had assigned the loan in question to the Ohio Student Loan Commission of Ohio. The only witnesses at the trial were the debtors. The Ohio Student Loan Commission was represented at the trial by the Assistant Attorney General for the State of Ohio, but offered no evidence to substantiate its position.

### FACTS

1. The Court finds from the testimony that John Gary Boylen and Lucille Boylen were husband and wife, having been married in May, 1978.

2. The loan in question was procured by Lucille Boylen to attend the Akron Institute for Medical and Dental Assistants and is in the amount of $1,200.00.

3. The bankruptcy petition was filed on September 14, 1982 and there was scheduled $28,607.78 in secured debt and $4,787.85 in unsecured debts.

4. The parties were separated at the time of filing the petition in bankruptcy and a divorce was pending between the parties. The divorce was granted on or about January 11, 1983.

5. At the time of the trial, Mrs. Lucille Boylen was not employed but she had been employed as a nurse's aide for nine months during 1982. Her income for 1982 was approximately $2,500.00.

6. Mrs. Boylen was previously married. She has three children by that marriage and two children by her marriage to debtor, John Boylen.

7. Mrs. Boylen is presently on welfare, receiving $424.00 per month and food stamps valued at $206.00 per month.

8. Mrs. Boylen's rent is $225.00 per month and her utilities are approximately $206.00 per month. Food stamps cover food for herself and five children. The cost of clothing amounts to $15.00 a month. There are no allowances for medical expenses, drugs, recreation, etc.

9. There was no evidence that she was receiving support for any of the children.

10. Mr. John Boylen had been employed at Alside Corporation for a period of nine years. At the time of filing the bankruptcy petition on September 14, 1982 he was unemployed. However, he was receiving the sum of $632.00 per month as unemployment compensation.

11. Mr. Boylen has three children by a prior marriage and was under court order to make payments of $160.00 per month for these children.

12. Said debtor's monthly expenses as shown in the budget submitted to this Court are $222.00 for rent, $159.00 for utilities, $80.00 for food, and $50.00 for transportation. This budget leaves debtor with a negative $39.00 monthly from his unemployment compensation.

13. At the time of filing the bankruptcy petition, Mrs. Boylen was the owner of a 1981 Chevette for which she owed $4,900.00 to GMAC. Since filing the bankruptcy petition, the car has been repossessed by the creditor.

14. The parties were owners of real estate located at 1484 Hillside Terrace, Akron, Ohio, the market value being approximately $24,000.00. There is a mortgage to Kissell Company for $20,000.00 and First National Bank of Akron has a judgment lien of $1,957.78.

15. The property was abandoned by the trustee and a No Asset Report was filed with the Court on October 15, 1982. The debtors' furniture was mortgaged to Household Finance in the amount of $1,050.00 and has a value of $595.00.

16. The student in these proceedings was Lucille Boylen, aka Lucille Polino. John Gary Boylen was co-maker on the loan but he is not a student.

17. There was no evidence that either debtor had any other property or expected inheritances or other assets in the foreseeable future.

18. The Ohio Student Loan Commission offered no evidence to dispute said facts.

### ISSUE

The issue is whether the debtors have presented sufficient evidence to be granted a discharge of these debts for undue hardship.

### LAW

■ The first issue which this court must determine is whether the exception to discharge for student loan debts as set forth in 11 U.S.C. Section 523(a)(8) applies to debtor, John G. Boylen, in light of the fact that he was only a co-maker on the debt and never was a student. Based on the Legislative History and the remarks of various congressmen relative to this exception to discharge, this Court finds that the United States Congress intended that this exception be applicable only to the student debtor and not to any co-makers on the debt.

11 U.S.C. Section 523(a)(8) provides that a debt is nondischargeable in bankruptcy where the same is "for an educational loan made, insured, or guaranteed by a governmental unit, or made under any program

funded in whole or in part by a governmental unit or a nonprofit institution of higher education ..." The language of this exception is rather plain and does not appear to limit itself by its terms to the student debtor only. However, as noted by the Sixth Circuit Court of Appeals in *Roth Steel v. Sharon Steel,* 705 F.2d 134, Nos. 80–3702/3748 (6th Cir. April 8, 1983), "The language of a statute must be given its plain meaning, unless the intent of the legislature or the purposes served by the statute would be frustrated by such an interpretation." *Id.* at 152. Upon an examination of the Legislative History, this Court finds that Congress' intent and the purposes for which this exception to discharge was enacted would be frustrated if this debt were found to be nondischargeable as against debtor, John Boylen.

With regard to the exception to discharge for student loans, the legislative history is extensive, providing pages of debate and pages of congressional comments along with letters from individuals both in support of and opposing this exception to discharge.[1] In particular, comments of Representative Cornell indicate that the intent of this Amendment[2] is to prevent the abuse of the student loan program by those who, upon graduation, have but one debt, that being the student loan debt, and then seek to obtain a fresh start by filing bankruptcy upon graduation. 124 Cong.Rec., *supra.* at 466 (Remarks of Rep. Ertel).

The legislative history further indicates the reason that Congress felt that student loans should be treated differently than other debts is due to the fact that when the average creditor determines to extend credit to an individual, it generally relies upon collateral owned by the debtor or upon the good credit rating of the debtor. In the case of a student loan, however, most students have no credit rating or collateral to pledge as security against the student loan debt. Accordingly, in extending the student loan, the collateral relied upon is the intangible collateral of that student's ability to make a better living after graduation so that he will be in a position to satisfy the student loan debt. *Id.,* 124 Cong.Rec., *supra.* at 468 (remarks of Rep. Erlenborn).

Throughout the legislative history, the reference is always to the student. In opposing the amendment, Representative Dodd noted that this bill would affect ten million students solely due to the fact that they are students in need of financial assistance to get through school. 124 Cong.Rec., *supra.* at 467. At no point does the legislative history refer to this debt being nondischargeable as against co-makers or co-debtors liable on the debt. Instead, the legislative history makes reference to the fact that co-makers are generally not required on these debts. H.R.Rep. No. 95–595, 95th Cong. 1st Sess. 133 (1977).

As set forth in the Report of the Committee on the Judiciary for H.R. 8200,

a few serious abuses of the bankruptcy laws by debtors with large amounts of educational loans, few other debts, and well-paying jobs, who have filed bankruptcy shortly after leaving school and before any loans became due, have generated the movement for an exception to discharge. H.R.Rep. No. 95–595, *supra.* at 133, U.S.Code Cong. & Admin.News 1978, p. 6094.

Debtor, John Boylen, is a far cry from the debtor about whom this exception to discharge was drafted. This debtor has received no benefit from the student loan debt in question. It was not he but his former wife, Lucille Boylen, who received the education. Moreover, he does not even have the benefit of a higher family income

---

1. See for example: H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 132–162 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787; 124 Cong. Rec. H 466–472 (daily ed. February 1, 1978); S.Rep. No. 95–989, 95th Cong., 2d Sess. 79 (1978); 124 Cong.Rec. H 11096 (daily ed. Sept. 28, 1978); 124 Cong.Rec. S 17412 (daily ed. October 6, 1978).

2. As originally proposed by the House of Representatives, Bankruptcy Reform Act of 1978 did not except student loans from discharge. See H.R. 8200 as reported on September 8, 1977.

due to Mrs. Boylen's education because of the fact that the parties are now divorced. The Court finds that Congress had no intention to except a co-maker's liability on a student loan debt from discharge. Such an exception would be utterly contrary to the fresh start pervasive throughout this Bankruptcy Code and the Bankruptcy Act of 1898 and the purposes for which this exception was enacted.

Moreover, as more fully explained below, even if this Court were to find that Congress intended that a co-maker's liability on a student loan debt be nondischargeable in bankruptcy, this Court finds that the payment of the student loan debt would create an undue hardship for debtor, John Boylen.

█ The next issue which faces this Court then is whether payment of the student loan debt in question would create an undue hardship upon debtor, Lucille Boylen. Student loans are excepted from discharge under 11 U.S.C. Section 523(a)(8)[3] unless the debt became due prior to five years before the filing of the petition in bankruptcy or unless excepting the debt from discharge would impose an undue hardship on the debtor or the debtor's dependents. In the instant case, the provision regarding the five-year limitation on dischargeability is not applicable.

The debtor claims that Mrs. Boylen's student loan debt is dischargeable because excepting it from discharge would impose an undue hardship on her. Undue hardship is not defined by the Bankruptcy Code nor is it defined in the legislative history.[4] This Court, after considering testimony at the trial, concludes that the payment of the student loan will impose an undue hardship on the debtor, Lucille Boylen.

In determining whether the repayment of a student loan would create an undue hardship on a debtor, the Court must look not only to the debtor's present income but also the debtor's anticipated future income. *In Re Littel,* 6 B.R. 85, 6 B.C.D. 1049 (Bkrtcy. D.Or.1980). As set forth in *In Re Wegfehrt,* 10 B.R. 826 (Bkrtcy.N.D.Ohio 1981),

> ... the rate and amount of his (debtor's) future resources should be estimated reasonably in terms of ability to obtain, retain, and continue employment, and the rate of pay that can be expected ... The total amount of income, its reliability, and the periodicity of its receipt should be adequate to maintain the debtor and his dependents, at a minimal standard of living within their management capability, as well as to pay the educational debt.[5]

Debtor, Lucille Boylen, is presently unemployed. However, her education does permit her to seek and obtain employment as a nurse's aide. Indeed, in 1982 Mrs. Boylen was employed for a period of nine months as a nurse's aide. During this period of time, Mrs. Boylen only received $2,500.00 as total income.

Mrs. Boylen has submitted a budget to this Court for herself and her five minor dependents. On said budget Mrs. Boylen states that she receives the sum of $424.00 in welfare benefits and that she has monthly expenses of $481.00 which leaves her with a monthly shortage, before considering any payment on her student loan, of $57.00. Mrs. Boylen does not receive any child support from either of her two former hus-

---

3. 11 U.S.C. Section 523(a)(8) provides:
   A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—
   (8) for an educational loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or a nonprofit institution of higher education, unless—
   (A) such loan first became due before five years (exclusive of any applicable suspension of the repayment period) before the date of the filing of the petition; or

(B) excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents.

4. H.R.Rep. No. 595, 95th Cong. 1st Sess. 132–162 (1977).

5. *In Re Wegfehrt, supra,* at 830, citing Commission on the Bankruptcy Laws of the United States. Report of the Commission on the Bankruptcy Laws of the United States, H.R. Doc. No. 137, 93rd Cong., 1st Sess. Part II, p. 140, n. 15 (1973).

bands. The Court has examined the various items in the budget and finds the amounts allocated to be very reasonable. The Court further notes that the budget makes no allowance for food due to the fact that she is receiving food stamps. The budget also makes no allowance for various household items and toiletries which are not covered by food stamps. Were debtor to obtain employment in the future, no doubt she would lose at least a portion of her food stamp allotment and other welfare benefits due to her job and she would also incur expenses for child care while she is at work.

As the debtor's economic life presently stands, debtor is not capable of maintaining even a minimal standard of living for herself and her five dependents even with the help which she receives from the Government. The Court also finds that even if debtor were to find a job her economic life would not be appreciably bettered due to the fact that she would lose some, if not all, of her welfare benefits and also would be forced to incur expenses for child care.

The student loan debt in question represents approximately twenty-five percent of the debt sought to be discharged through this bankruptcy. As such, this Court finds that the within bankruptcy\is "a result of a true need for bankruptcy relief rather than an abuse of the bankruptcy system". *In Re Wegfehrt, supra,* at 830., citing H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 133 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6094. Therefore, this Court finds that the repayment of the student loan would impose an undue hardship on debtor, Lucille Boylen.

As this Court earlier noted, the repayment of the student loan would also impose an undue hardship on plaintiff-debtor, John Boylen. Said debtor is presently unemployed and is receiving the sum of $632.00 in unemployment compensation monthly. The debtor has submitted a budget to this Court which sets forth monthly expenses in the amount of $671.00 which leaves said debtor with a monthly shortage of $39.00. Said budget includes the sum of $160.00 in child support which child support is paid not to Lucille Boylen but to debtor's former wife prior to Lucille Boylen, by whom he has three children. The budget submitted to this Court by said debtor is highly reasonable including only $50.00 a month for transportation and $80.00 a month for food. Said debtor has no reasonable prospects of any betterment in employment as he has received no college degree or other technical training. Also, it may well be that at such time as Mr. Boylen obtains a job or is called back to work by Alside, he will be required to make child support payments to his former wife, Lucille Boylen, over and above the support payments he is already making to his first wife. Therefore, this Court finds that payment of the student loan debt would create an undue hardship on debtor, John Boylen, as well.

Therefore, it is the conclusion of this Court that the complaint to determine dischargeability of the student loan debt as filed by Plaintiffs-debtors, John G. and Lucille Boylen, should be granted and said debt should be discharged as the same creates an undue hardship on said debtors and their eight dependents.