**In re Barbara PALMER, f/k/a Barbara Haddican, Debtor.**

**Barbara PALMER, f/k/a Barbara Haddican, Plaintiff,**

v.

**STUDENT LOAN FINANCE CORPORATION, f/d/b/a South Dakota Student Loan Corporation, Defendant.**

**Bankruptcy No. 92–40510.**
**Adv. No. 92–4054.**

United States Bankruptcy Court,
D. South Dakota, S.D.

May 11, 1993.

Cecelia A. Grunewaldt, Grunewaldt Law Office, Sioux Falls, SD, for plaintiff-debtor Barbara Palmer, f/k/a Barbara Haddican.

Terry N. Prendergast, Boyce, Murphy, McDowell & Greenfield, Sioux Falls, SD, for Pennsylvania Higher Educ. Assistance Agency, Assignee/Guarantor of defendant Student Loan Finance Corp.

Jeffrey T. Sveen, Siegel, Barnett & Schutz, Aberdeen, SD, for defendant Student Loan Finance Corp.

PEDER K. ECKER, Bankruptcy Judge.

### ISSUE

The matter before the Court is an adversary complaint filed by Sioux Falls, South Dakota, Attorney Cecelia A. Grunewaldt on behalf of Plaintiff–Debtor [hereinafter "Debtor"] seeking a determination of dischargeability which raises the following issue: whether a non-student debtor who co-signed applications for a former spouse's educational loans is subject to the exception to discharge provision of 11 U.S.C. § 523(a)(8). Debtor maintains the provision does not apply when a non-student co-signer receives no funds or educational benefits from student loan proceeds. In resistance, Aberdeen, South Dakota, Attorney Jeffrey T. Sveen on behalf of Defendant Student Loan Finance Corporation, f/d/b/a South Dakota Student Loan Corporation, and Sioux Falls, South Dakota, Attorney Terry N. Prendergast on behalf of Pennsylvania Higher Education Assistance Agency [hereinafter "PHEAA"] as assignee/guarantor of Defendant Student Loan Finance Corporation filed answers stating funds were disbursed for the intent of student loans and educational benefits, therefore, the debts are nondischargeable under the provisions of the Bankruptcy Code. This Memorandum Decision shall constitute Findings of Fact and Conclusions of Law as required by Federal Rule of Bankruptcy Procedure 7052. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(1).

### FACTS AND PROCEDURAL BACKGROUND

In 1988 and 1989, Debtor co-signed financial aid applications completed and submitted by her spouse, Gerald Haddican, for the purpose of financing his post-secondary education at Dakota State University in Madison, South Dakota.[1] The couple divorced in 1992, and on August 17 of that year, Debtor filed a Chapter 7 petition for relief followed by the filing of this complaint November 16, 1992. The adversary action was filed to determine that the indebtedness arising from the two federally insured loans is dischargeable based on the theory that 11 U.S.C. § 523(a)(8) does not apply to situations where non-student debtors co-sign applications for student loans that are subsequently approved, disbursed to, and utilized by former spouses. On December

---

1. Debtor endorsed/co-signed two of her spouse's "Supplemental Loans for Students" (SLS) applications and joined her spouse in completing two SLS Loan Credit Applications: the first application, signed August 25, 1988, was for a loan amount of $2,805 to be used for education expenses for the school period 8/88–5/89, and the second application, signed July 25, 1989, was for a loan amount of $4,000 to be used for the school period 8/89–5/90. (Plaintiff's Exhibits 1, 2; Defendant's Exhibit A.)

7, 1992, an answer in quest of dismissing the complaint was filed by Defendant Student Loan Finance Corporation alleging Debtor failed to state a claim for relief. On December 15, 1992, an answer was filed by PHEAA urging the Court to adjudicate the debt nondischargeable. An evidentiary trial was held January 13, 1993, at which time, the Court took the matter under advisement and issued a scheduling order for Debtor and PHEAA to submit written briefs.

## COMPETING ARGUMENTS

Debtor states the majority view concerning this issue is espoused in *In re Boylen*, 29 B.R. 924 (Bankr.N.D.Ohio 1983), a case that held 11 U.S.C. § 523(a)(8) inapplicable to a non-student debtor who was co-maker on a former spouse's loan. While admitting that the statute's plain language was not limited to student debtors alone, the *Boylen* court found that the congressional intent and legislative history of 11 U.S.C. § 523(a)(8) revealed an intent to curb abuse of educational loan programs by *students* who sought a discharge of school loan debts immediately after graduation. *Id.* at 927. The court reasoned that applying the non-limiting language to *non*-student debtors would frustrate this specific intent: "Congress had no intention to except a co-maker's liability on a student loan debt from discharge" since it was "utterly contrary to the fresh start" purposes envisioned by the Bankruptcy Code. *Id.* Debtor reinforces this position with subsequent decisions consistent with *Boylen: In re Wilcon*, 135 B.R. 709, 711 (Bankr.D.Mass. 1992) (for purposes of Section 523(a)(8), a loan is only "educational" with respect to the *student* for whose benefit the loan was made); *In re Pelkowski*, 135 B.R. 254, 256 (Bankr.W.D.Pa.1992) (Section 523(a)(8) is clearly directed at *students* rather than parent-debtors who co-sign notes for their children's educational loans); *In re Zobel*, 80 B.R. 950, 952 (Bankr.N.D.Iowa 1986) (Section 523(a)(8) was intended to apply to *student* debtors only, not to non-student co-makers); *In re Behr*, 80 B.R. 124, 127 (Bankr.N.D.Iowa 1987) (the scope of Section 523(a)(8) does not include a Chapter 7 debtor father's liability as a non-student co-maker of a loan for his son). Debtor submits this line of authority is ample justification for the Court to discharge all liability incurred as a result of co-signing her former spouse's educational loan applications.

In reply, PHEAA rejects the allegation that *In re Boylen* and its progeny represent the majority position regarding application of Section 523(a)(8) and, instead, contends this position has been universally rejected—noting that the *Boylen* court itself rejected this line of authority when it ruled in *In re Dull*, 144 B.R. 370, 372 (Bankr. N.D.Ohio 1992), that the language of Section 523(a)(8) was "all inclusive" and applicable to all educational loan debt whether or not the obligor is a student and whether or not benefits were received from the loans. PHEAA contends the *Dull* decision is representative of the current trend regarding the interpretation and application of Section 523(a)(8). *In re Martin*, 119 B.R. 259 (Bankr.E.D.Okla.1990); *In re Hudak*, 113 B.R. 923 (Bankr.W.D.Pa.1990); *Matter of Selmonosky*, 93 B.R. 785 (Bankr. N.D.Ga.1988); *In re Feenstra*, 51 B.R. 107 (Bankr.W.D.N.Y.1985). PHEAA adds that not only are these cases the current trend because they are more recent than those cited by Debtor, they also illustrate a more appropriate application of the plain meaning rule inasmuch as the statutory language describes the nature of the loan and not the status of the borrower, thus favoring an exception to discharge of *any* debt for an educational loan. *In re Taylor*, 95 B.R. 550, 551 (Bankr.E.D.Tenn.1989); *In re Hammarstrom*, 95 B.R. 160 (Bankr. N.D.Cal.1989); *Matter of Barth*, 86 B.R. 146, 148 (Bankr.W.D.Wis.1988). PHEAA also states the case law cited by Debtor is inconsistent with current trends in that two of the five cases relied on have been reversed,[2] two others were decided before

---

**2.** In *Pelkowski*, the bankruptcy court's decision to discharge a co-maker's student loan liability was reversed by the district court, and the reversal was affirmed by the Third Circuit. *In re Pelkowski*, 990 F.2d 737 (3d Cir.1993).

1988 and have since been rejected by other courts deciding this issue, and the final case, *In re Boylen*, is significantly distinguishable from this case in that it was decided on grounds of "undue hardship," which is a clearly delineated exception to Section 523(a)(8).[3]

In an effort to persuade the Court to adhere to this "more recent" line of authority, PHEAA emphasizes that a policy of nondischargeability of educational debts was a pre-Code priority of Congress that was eventually incorporated into the Bankruptcy Code via the Bankruptcy Reform Act of 1978.[4] Since its original inclusion into the Bankruptcy Code, the statute has been modified, but always in an expansive manner, and always broader than its pre-Code predecessor.[5] PHEAA believes this

evidence supports a non-limiting application of the statute and, in sum, refutes Debtor's position as simply contrary to Congress' intent by arguing that a determination that the debt is dischargeable "would endanger various federal, state and private nonprofit educational loan programs that Congress sought to encourage."

Debtor's response to PHEAA's reply steadfastly adheres to the specific ruling of *In re Boylen* and reminds the Court that a finding of undue hardship does not dilute the conclusion that Congress never intended Section 523(a)(8) to apply to a co-maker's liability on student loan debts. Debtor also disputes any notion that the *Boylen* court was the same court that decided the case of *In re Dull*[6] wherein co-maker liability was

---

In *Wilcon*, the bankruptcy court's decision to discharge a parent-debtor's liability for an educational loan obtained on behalf of his son was also reversed by the district court which found it erroneous to limit Section 523(a)(8) only to students when the plain language "mandates that *any* debt incurred by *an individual debtor* for an educational loan ... is nondischargeable." *In re Wilcon*, 143 B.R. 4, 5 (D.Mass.1992) (emphasis in the original).

3. The actual *Boylen* complaint was based on subparagraph (B) of Section 523(a)(8), the "undue hardship" provision that allows a debtor to discharge educational debt if excepting the debt from discharge would impose an undue hardship on the debtor or the debtor's dependents. 11 U.S.C. § 523(a)(8)(B). The *Boylen* court did, in fact, find a condition of "undue hardship" and allowed the debt to be discharged. *In re Boylen*, 29 B.R. 924, 928 (Bankr.N.D.Ohio 1983).

In this case, the parties have agreed there is no "undue hardship" argument to be made.

4. Determined to protect certain educational assistance programs, Congress initially enacted a nondischargeability provision as part of the Education Amendments of 1976 which created a new section, 20 U.S.C. § 439A, to the Higher Education Act of 1965. *See* Education Amendments of 1976, Pub.L. No. 94–482, § 127(a), 90 Stat. 2081, 2141 (1976). In 1978, this provision was repealed and replaced by a similar provision, 11 U.S.C. § 523(a)(8), as part of the Bankruptcy Reform Act of 1978. *See* Pub.L. No. 95–598, §§ 317, 402(a), (d), 92 Stat. 2549, 2682 (1978).

5. PHEAA states the following changes have broadened the statute's application:

● In 1979, the statute was changed to include all federal, state, and college financial aid programs, then in effect, with the following language:

"(8) for an educational loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or a nonprofit institution of higher education, ...."
11 U.S.C. § 523(a)(8) (1979).

● In 1984, the limiting phrase "of higher education" was deleted, which, PHEAA asserts, covers educational loans to students and their families made under programs "funded in whole or in part" by nonprofit institutions.

● In 1990, Congress amended the provisions of Chapter 13 to prevent student loans from being discharged in any proceeding under that chapter commenced on or after November 5, 1990. Pub.L. 101–746, § 3621, 104 Stat. 4964–65 (1990).

● In 1990, the statute was changed to make it more difficult to obtain a student loan discharge by requiring that the debt be due more than seven years before the date the bankruptcy petition was first filed as opposed to a previous five-year requirement. 11 U.S.C. § 523(a)(8) (1990).

● In 1990, more sources of educational debt were specifically included as nondischargeable. Now, excepted from discharge is any debt:

"(8) for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, ... or for an obligation to repay funds received as an education benefit, scholarship or stipend...."
11 U.S.C. § 523(a)(8) (1990).

6. Debtor distinguishes any apparent consistency between these two decisions by noting that *In re Boylen* was decided by Bankruptcy Judge Harold F. White, one of eight bankruptcy courts in the Northern District of Ohio, whereas *In re Dull* was decided by Bankruptcy Judge William J. O'Neill, a different bankruptcy court from this same district.

subject to Section 523(a)(8). And in rebuttal to the allegation that Debtor's supporting authority is outdated and "unanimously rejected," Debtor highlights *In re Kirkish,* 144 B.R. 367 (Bankr.W.D.Mich.1992), *citing Andrews University v. Merchant,* 958 F.2d 738, 740 (6th Cir.1992), as a recent case consistent with earlier rulings declaring non-student co-maker cases the rare instance when a literal application of the statute would produce a result demonstrably at odds with the intention of the drafters of Section 523(a)(8). *Id.* at 369. Next, Debtor demarcates PHEAA's authorities as irrelevant, since "all of these cases involve direct loans to parents as sole makers and obligors and do not involve comakers, cosigners or endorsers." [7] In sum, Debtor states that she did not receive any educational benefit of her former spouse's loans, she was not the sole maker of the student loans, and, consistent with the position held by several courts recently deciding this issue, she is not "the person Congress intended to except from dischargeability in a bankruptcy situation."

## APPLICABLE LAW

This controversy requires an interpretation of 11 U.S.C. § 523(a)(8) that is consistent with congressional intent. The resolution will require the Court to consider various aspects of the statute: its enactment, its intended goals, and the source of its interpretative problems when applied by other bankruptcy courts.

### A. *Enacting 11 U.S.C. § 523(a)(8)*

In 1965, the Higher Education Act was enacted along with the Guaranteed Student Loan Program "to strengthen the educational resources of our colleges and universities and to provide financial assistance for students in post-secondary and higher education" by making reasonably low interest rates accessible. S.Rep. No. 673, 89th Cong., 1st Sess. 1 (1965), *reprinted in* 1965 U.S.Code Cong. & Admin.News 4027, 4030. The Guaranteed Student Loan Program is able to provide lower interest rates since educational loans from banks, credit unions, and educational institutions are insured by the U.S. Department of Education or by state agencies or nonprofit organizations and reinsured by the U.S. Department of Education. 20 U.S.C. §§ 1078, 1084, 1085(d) (1988); *see* H.R.Rep. No. 595, 95th Cong., 2d Sess. 135, 140 (1977), *reprinted in* 1978 U.S.Code Cong. & Admin.News 5963, 6096, 6101. The lender is entitled to be repaid from the federal government should the debtor die, become disabled, or is allowed to discharge the obligation through bankruptcy. 20 U.S.C. § 1087.

In order to ease some of the tension mounting because the Bankruptcy Act did not specifically except educational loans from discharge,[8] the Higher Education Act was amended.[9] 3 L. King, *Collier on Bankruptcy* ¶ 523.18, at 523–147, –148 (15th ed. 1993). This amendment excepted any educational loans "insured or guaranteed" under the Higher Education Act from discharge in bankruptcy unless the debtor could show that the loan came due more than five years before the petition was filed or could show that excepting the debt from discharge would cause undue hardship. *Id.* Pressure remained, however, to integrate a similar provision in bankruptcy, and so when Congress dealt with and considered the extensive 1978 legislative revisions of the bankruptcy laws, an

---

**7.** Debtor states the following cases involve loans made directly to parents as sole makers, not as co-signers: *In re Varma,* 149 B.R. 817 (N.D.Tex. 1992); *In re Martin,* 119 B.R. 259 (Bankr. E.D.Okla.1990); *In re Hudak,* 113 B.R. 923 (Bankr.W.D.Pa.1990); *In re Hammarstrom,* 95 B.R. 160 (Bankr.N.D.Cal.1989); and *In re Feenstra,* 51 B.R. 107 (Bankr.W.D.N.Y.1985).

**8.** "Under the Bankruptcy Act, educational loans were dischargeable resulting in millions of dollars in federally guaranteed loans defaulted upon annually." *In re Shipman,* 33 B.R. 80, 82 (Bankr.W.D.Mo.1983).

**9.** The House Education and Labor Committee proposed the amendment, Section 439(a)(A), as part of the Education Amendments of 1976. Pub.L. No. 89–329, § 439A, as added by Education Amendments of 1976, Pub.L. No. 94–482, § 127(a), 90 Stat. 2141 (1976) (repealed by Bankruptcy Reform Act of 1978, Pub.L. No. 95–598, § 317, 92 Stat. 2678 (1978)).

amendment was sponsored [10] and passed to include a nondischargeability provision for educational loans. *See* S.Rep. No. 989, 95th Cong., 2d Sess. 79 (1978), *reprinted in* 1978 U.S. Code Cong. & Admin. News 5787, 5865. The amendment was 11 U.S.C. § 523(a)(8).[11]

### B. The Goals of 11 U.S.C. § 523(a)(8)

Statements from the primary sponsor of Section 523(a)(8), Representative Ertel of Pennsylvania, indicate that preserving the financial integrity of educational loan programs was paramount:

> The purpose of this particular amendment is to keep our student loan programs intact. As many Members know, the default rate in the student loan program has been escalating to tremendous proportions in the past year. In accordance with that, the number of students going into bankruptcy—or ex-students— has increased over the years 1965 through 1972, by 1,200 percent for the years 1972 through 1975.
>
> What happens with these programs is that as people borrow the money, go to school and then repay it to the educational institution, when it becomes due approximately 1 year after completion of school. After repaying this loan, this money goes into a revolving fund which is then available for other students on down the line. When they default and do not pay, and eventually reach the

bankruptcy state, we are penalizing students who are coming along through the system.

> . . . .

> ... Without this amendment, we are discriminating against future students, because there will be no funds available for them to get an education.

124 Cong.Rec. 1791 (1978) (remarks of Rep. Ertel). One way to ensure the ongoing integrity of student loan programs was to set a second goal that would curb abusive practices by debtors seeking to discharge their loan obligations by filing bankruptcy. Congress intended Section 523(a)(8) to fulfill "the twin goals of rescuing the student loan program from fiscal doom and preventing abuse of the bankruptcy process by undeserving debtors." *In re Pelkowski*, 990 F.2d 737, 743 (3d Cir.1993). *See generally* 124 Cong.Rec. 1791–98; H.R.Rep. No. 595, at 132–62, *reprinted in* 1978 U.S. Code Cong. & Admin. News at 6093–123.

As noted by PHEAA,[12] Section 523(a)(8) has been modified on several occasions to broaden and expand its application in an attempt to ensure these tandem goals are met.[13] Currently, the statute states:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
>
> . . . .
>
> (B) excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents.

11 U.S.C. § 523(a)(8) (1978).

---

**10.** Section 523(a)(8) originated as an amendment offered by Representative Ertel of Pennsylvania—an amendment that quickly passed in the House. *See* 124 Cong.Rec. 1791, 1798 (1978). There was no debate in the Senate concerning the dischargeability of student loans, and the provision was passed without any material change. *See* 124 Cong.Rec. 33,992, 33,-998 (1978). In essence, the only discussion regarding the purpose of Section 523(a)(8) is found in the statements of the sponsors. *See generally In re Hammarstrom*, 95 B.R. 160, 163 (Bankr.N.D.Cal.1989).

**11.** As originally enacted, 11 U.S.C. § 523(a)(8) excepted from general discharge *any* debt:

> (8) to a governmental unit, or a nonprofit institution of higher education, for an education loan, unless—
>
> (A) such loan first became due before five years before the date of the filing of the petition; or

**12.** See *supra* note 5 and accompanying text.

**13.** Statistics show the goal of preserving student loan programs has been an increasingly difficult challenge through the years: from 1983 to 1989, the volume of government-subsidized student loans grew by 83%, yet the default rate increased 350% during this same time period. By mid–1991, the student default rate was estimated at almost 12%, or about $2 billion, and at that time, the 1992 estimate was set at $3 billion. Epstein, Nickles & White, *Bankruptcy: Practitioner Treatise Series*, Vol. 2, § 7–33 n. 2, at 394 (West 1992).

(8) for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or non-profit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend, unless—

(A) such loan, benefit, scholarship, or stipend overpayment first became due more than 7 years (exclusive of any applicable suspension of the repayment period) before the date of the filing of the petition; or

(B) excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents.

11 U.S.C. § 523(a)(8). In general, then, educational loans are not dischargeable unless loans that have been outstanding for more than seven years would cause undue hardship if excepted from discharge. Metaphorically speaking, one author has summarized the results of the modification process as follows: "Not only has the preamble in subsection (8) been expanded to catch more fish in its non-dischargeability net, but also subsection (8) has been narrowed to keep the fish from escaping through the net." Epstein, Nickles & White, *Bankruptcy: Practitioner Treatise Series*, Vol. 2, § 7–33, at 395 (West 1992).

## C. Interpreting and Applying 11 U.S.C. § 523(a)(8)

█ Case law amply demonstrates the long-term, widespread gap among bankruptcy courts regarding interpretations of Section 523(a)(8) as applied to non-student debtors. The clean split of authority presents two sides: on one side are courts that believe the statute is meant to be "all-inclusive," and on the other are courts that believe the statute is meant to apply to student debtors only.[14] The crux of the problem lies with two constructions of the statute using the plain meaning rule which states, "[T]he plain meaning of legislation should be conclusive, except in the 'rare cases in which the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.'" *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 242, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1988), *citing Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982). Where the statute's language is plain, "the sole function of the courts is to enforce it according to its terms." *Caminetti v. United States*, 242 U.S. 470, 485, 37 S.Ct. 192, 194, 61 L.Ed. 442 (1917).

Courts favoring the all-inclusive approach find the statutory language of Section 523(a)(8) unambiguous since reference is simply made to the nondischargeability

**14.** In summary, the following courts support an all-inclusive approach to the application of Section 523(a)(8):
- *Pelkowski v. Ohio Student Loan Commission*, 153 B.R. 29 (W.D.Pa.1992).
- *In re Wilcon*, 143 B.R. 4 (D.Mass.1992).
- *In re Webb*, 151 B.R. 804 (Bankr.N.D.Ohio 1992).
- *In re Dull*, 144 B.R. 370 (Bankr.N.D.Ohio 1992).
- *In re Martin*, 119 B.R. 259 (Bankr. E.D.Okla.1990).
- *In re Hudak*, 113 B.R. 923 (Bankr.W.D.Pa. 1990).
- *In re Taylor*, 95 B.R. 550 (Bankr.E.D.Tenn. 1989).
- *In re Hammarstrom*, 95 B.R. 160 (Bankr. N.D.Cal.1989).
- *Matter of Selmonosky*, 93 B.R. 785 (Bankr. N.D.Ga.1988).
- *Matter of Barth*, 86 B.R. 146 (Bankr. W.D.Wis.1988).

- *In re Feenstra*, 51 B.R. 107 (Bankr.W.D.N.Y. 1985).

In summary, the following courts conclude Section 523(a)(8) is intended to apply to student debtors only:
- *In re Kirkish*, 144 B.R. 367 (Bankr. W.D.Mich.1992).
- *In re Pelkowski*, 135 B.R. 254 (Bankr. W.D.Pa.1992).
- *In re Behr*, 80 B.R. 124 (Bankr.N.D.Iowa 1987).
- *In re Meier*, 85 B.R. 805 (Bankr.W.D.Wis. 1986).
- *In re Zobel*, 80 B.R. 950 (Bankr.N.D.Iowa 1986).
- *In re Bawden*, 55 B.R. 459 (Bankr.M.D.Ala. 1985).
- *In re Washington*, 41 B.R. 211 (Bankr. E.D.Va.1984).
- *In re Boylen*, 29 B.R. 924 (Bankr.N.D.Ohio 1983).

of an educational debt: "educational benefit overpayment or loan made, . . . or for an obligation to repay funds received as an educational benefit, scholarship or stipend." There is no reference made to borrower status. "When statutory language is . . . clear and unambiguous . . . rules of statutory construction do not require a court to speculate about the statute's purpose to determine its meaning." *Ashley, Drew & N. Ry. Co. v. United Transp. Union Local 1121*, 625 F.2d 1357, 1365 (8th Cir.1980). Other courts that apply the non-limited language to non-student debtors believe the plain meaning rule is inapplicable where it yields absurd consequences and where "there is an alternative interpretation that reasonably effects the statute's purpose." *Mangels v. United States*, 828 F.2d 1324, 1329 (8th Cir.1987), *citing Ashley, Drew & N. Ry. Co. v. United Transp. Union Local 1121*, 625 F.2d at 1365; *Hodgson v. Bd. of County Comm'rs*, 614 F.2d 601, 612 (8th Cir.1980).

Not unlike other courts previously deciding this issue, this Court finds it logical and appropriate to resolve the dispute in this case by making an inquiry of the statute itself, pursuant to the plain meaning rule, in order to decide if a determination of nondischargeability of a non-student debtor's liability as co-signer for a former spouse's student loans is "absurd" and, if so, whether it is a reasonable alternative to find Section 523(a)(8) applicable to student debtors only. *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. at 241, 109 S.Ct. at 1030; *Richards v. United States*, 369 U.S. 1, 2, 82 S.Ct. 585, 587, 7 L.Ed.2d 492 (1962).

## ANALYSIS

Primarily, Debtor argues that Section 523(a)(8) is inapplicable since she was not a student and not a beneficiary of educational loans but, rather, was merely a co-signer of student loan applications. Supported by case law that hinges on courts finding legislative intent "frustrated" and absurd re-

sults produced when applied to co-maker liability, Debtor concludes she is not "the person Congress intended to except from dischargeability in a bankruptcy situation," therefore, this debt should not be excepted from discharge. This rationale suggests there is an ambiguity in the silence of Section 523(a)(8) that requires the Court to go beyond the statutory language and look toward congressional intent in the hope that the Court will conclude the statute was designed to target debtors because they are students, rather than debtors because they owe student loan debt. True, this position has attracted a number of courts to the point of persuasion,[15] but this Court finds no ambiguity in the fact that the nondischargeability described in this provision is silent as to the status of the borrowing debtor. *In re Pelkowski*, 990 F.2d at *741. Nor is there any ambiguity found in the language that is presented in the text of the statute. The unambiguous language of Section 523(a)(8) states a discharge under Section 727 of Title 11 does not discharge an "individual debtor from any *debt*" (emphasis added) for an educational program described in its provision. *In re Wilcon*, 143 B.R. at 5; *In re Varma*, 139 B.R. 817 (N.D.Tex.1992); *In re Dull*, 144 B.R. at 372. There is simply no distinction that an individual debtor's status as borrower, be it maker, co-maker, spouse of a student, or parent of a student, negates the nondischargeability of the educational debt or automatically casts that type of debtor outside the realm of Section 523(a)(8). *In re Pelkowski*, 990 F.2d at *741. Without question, the focus of Section 523(a)(8) is on the particular type of debt, not the type of debtor. *Matter of Barth*, 86 B.R. at 148.

As a whole, Section 523 specifically describes nine types of *debts* that are subject to nondischargeability—and all are described without reference to the debtor's status as it may relate to the debt. Among the types of debts specifically delineated are debts for fraud incurred while acting in a fiduciary capacity or for defalcation, em-

**15.** See *supra* note 14 for a summary of courts finding Section 523(a)(8) was intended to apply solely to student debtors.

bezzlement, or misappropriation; debts for certain kinds of taxes; debts for willful and malicious conversion or injury; and debts to a spouse, former spouse, or child for alimony to, maintenance for, or support of the spouse or child. 11 U.S.C. § 523(a)(8)(1), (4), (5), (6). All of these subsections contemplate specific debts, and the particular kind of debt targeted by subsection (8) is educational loan debt. *See also In re Pelkowski*, 990 F.2d at *741. Debtor's status as co-maker is relevant only for the purpose of establishing her own liability for her former spouse's two educational loans.

■ Because the statutory language of Section 523(a)(8) is clear and unambiguous, the plain meaning rule applies and the inquiry ends, provided its application yields no absurd results and an alternative interpretation does not exist that would reasonably effect the purpose of the statute. *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. at 235, 109 S.Ct. at 1026. The Court finds no absurdity in subjecting non-student debtors, such as the co-signing debtor in this case, to this nondischargeability provision. By definition, a co-signer or co-maker is one who formally agrees to undertake the financial duties of the maker if a default condition arises. Keeping in mind the twin goals sought to be accomplished by this provision, it is not absurd that co-maker liability was meant to be included in Section 523(a)(8). As stated by the sponsor of Section 523(a)(8), its primary purpose is to preserve the integrity of educational loan programs. At the time the statute was enacted, it was students who predominantly abused the system by filing bankruptcy and seeking a discharge of student loan debts right after graduation. Apparently, student loan programs at that time did not make student loans directly to parents on behalf of their student children nor were students routinely required to obtain co-signers on their loan applications.[16] But the fact that student debtors

were the predominant offenders that helped spark and justify the enactment of Section 523(a)(8) does not mean the purpose of the statute is frustrated or creates absurdities when it is applied to non-student debtors who also owe student loan debt. Nor is it logical to conclude that the future funding of educational loan programs will be less jeopardized if co-maker liability is discharged in bankruptcy simply by virtue of the non-student debtor's status as co-maker. In fact, just the opposite is true:

> "[R]eleasing co-signers could likely ... affect the economic viability of the student loan program. After all, the lenders seek the security of a non-student co-signer precisely because there is a commercial risk in looking only to the student for credit assurance."

*In re Pelkowski*, 990 F.2d at *744. Clearly, such an application of the statute *must* exist if the integrity of student loan programs is to be preserved. This interpretation and application of the statute is further validated inasmuch as Congress did, in fact, contemplate and carve out an exception to the nondischargeability provision (also without any reference or distinction made to a debtor's status as borrower) by allowing deserving debtors to except from discharge debt for student loans if the loans came due more than seven years before filing for relief or if the debtor can show that undue hardship will occur if the debt is not excepted from discharge. 11 U.S.C. § 523(a)(8)(A), (B); *In re Dull*, 144 B.R. at 372; *Matter of Barth*, 86 B.R. at 149. In sum, the Court believes this analysis supports the majority view and is most fairly imbedded in the plain meaning of the statute "in the sense of being most harmonious with ... the general purposes that Congress manifested." *U.S. Dep't of Health and Human Services v. Smith*, 807 F.2d 122, 126 (8th Cir.1986), *citing Commissioner of Internal Revenue v. Engle*, 464 U.S. 206, 217, 104 S.Ct. 597, 604, 78 L.Ed.2d 420 (1984).

**16.** The Higher Education Act of 1965 was amended in 1980 to include the PLUS loan program which made student loans directly to parents as primary obligors. 20 U.S.C. § 1078–2. Thus, the purpose of the PLUS loan program was to "provide parents with the liquidity to pay their reasonable share" of a child's higher education. *In re Hudak*, 113 B.R. at 924. *See also In re Webb*, 151 B.R. at *806.

Debtor also contends the statute should not apply since no educational benefits were received, however, the plain meaning interpretation also renders this argument ineffective. Debtor's liability is for student loan debt, and the argument that no educational benefits were received simply has no bearing on the issue, just as such an argument would have no merit if made by a student debtor who chose not to use loan proceeds for tuition, books, or fees and, therefore, received no educational benefit. The nature of the loan remains unchanged: the debt was still for education and the nondischargeability provision of Section 523(a)(8) still applies. *In re Hudak*, 113 B.R. at 924. The purpose of the loan or the nature of the debt is how the text of the provision was drafted, without any caveats as to benefits received or status as borrower. *In re Martin*, 119 B.R. at 261.

Because Section 523(a)(8) was originally drafted with reference to a type of debt as opposed to a type of debtor, it is evident it was intended to be broad in application. This intention is magnified when considering the many changes that have been made to expand the text since it was first enacted. The additional intent manifested by these extensions is to make it more difficult to discharge educational loans in bankruptcy. *In re Dull*, 144 B.R. at 372. Through the years, limiting phrases have been omitted and replaced with language that encompasses more types of student loan debt, i.e., scholarships and stipends; the ability to discharge educational loan debt in Chapter 13 proceedings has been eliminated; and the undue hardship provision has been modified to require loans to have been due more than seven years before the petition was filed rather than five years. This Court has long believed that Congress clearly intended "that debtors should make every effort to pay student loans." *In re Rice*, 13 B.R. 614, 617 (Bankr.D.S.D.1981). The modifications to Section 523(a)(8) support the philosophy behind the nondischargeability of student loan debt:

> "[T]hose who take advantage of the Federal government's deliberately generous approach to granting educational loans

(as well as other non-profit guarantying institutions), and later failed to repay them, should not be allowed to escape payment forever through bankruptcy."

*In re Martin*, 119 B.R. at 261, *citing* 125 Cong.Rec.H. 2759 (daily ed. May 7, 1979) (remarks of Rep. Hyde). With this understanding, it would probably be more accurate to find absurd results if, in the face of the plain meaning rule and in light of all the deliberate efforts to widen the path of nondischargeability, the Court would conclude the statute does not affect a non-student debtor's liability for student loan debt.

## CONCLUSION

Section 523(a)(8) was designed to protect the integrity of student loan programs by ensuring future funding for students seeking ways to finance higher education. This goal is accomplished through Section 523(a)(8) which excepts from discharge all types of educational debt as described in the provision. The one caveat to the statute permits deserving debtors to discharge student loan debt if the debt came due more than seven years before the petition was filed or if the debtor can show that excepting the debt from discharge would cause an undue hardship. Neither of those clearly delineated exceptions apply in this case.

This case does, however, present a non-student debtor liable for student loan debt by virtue of co-signing her former spouse's student loan applications. A co-signer or co-maker is one who formally undertakes to discharge the duties of the maker of an instrument, especially a promissory note, in the event of the maker's default. Debtor argues the nondischargeability provision should not apply because of her non-student status and because no educational benefits were received. But using the plain meaning rule to interpret and apply the statute, the Court finds there is no ambiguity in the language of Section 523(a)(8) and there is no ambiguity in the fact that the statute is silent on the subject of the debtor's status as co-maker of these educational loans. The statute clearly

states a discharge under Chapter 7 "does not discharge an individual debtor from any *debt*" (emphasis added) for an educational loan. In fact, all of the subsections of Section 523 were drafted to make certain types of debts nondischargeable from discharge based on the nature of the debt as opposed to the nature of the debtor responsible for the debt.

For all of these reasons, the Court finds that Section 523(a)(8) applies to non-student debtors, and, therefore, the student loan debt in this case is determined nondischargeable. The Court shall enter an appropriate order.