In re Gary M. **UTERHARK** and Kathleen Ola Uterhark, Debtors.

Gary M. **UTERHARK, Plaintiff,**

v.

**GREAT LAKES HIGHER EDUCATION CORPORATION, Defendant.**

Bankruptcy No. 94–11172.
Adv. No. 94–1351.

United States Bankruptcy Court, N.D. Ohio.

July 27, 1995.

Terry C. Weddleton, Painesville, OH, for debtors.

Lloyd J. Blaney, Madison, WI, for defendant.

## MEMORANDUM OF OPINION

DAVID F. SNOW, Bankruptcy Judge.

Plaintiff filed this adversary proceeding to determine dischargeability of loans which were used to finance his son's college education. He acknowledges that educational loans are generally nondischargeable under section 523(a)(8) but asserts that this exception to discharge is not applicable in this case for two reasons—first, because the exception to discharge is limited to students who receive educational benefits from the loans and, second, because repayment of the loans would impose undue hardship on him. Plaintiff's first argument stands or falls on the basis of statutory construction and involves no disputed factual issues. Plaintiff filed his motion for summary judgment in the hope that resolution of this issue would result in the determination that the loan is dischargeable. But for the reasons set forth below plaintiff's motion for summary judgment must be denied.

### Background

Plaintiff, Gary M. Uterhark ("Uterhark") obtained two loans totaling $8,000 from National City Bank ("National City") to finance his son Christopher's college education. Uterhark signed a promissory note for $4,000 on August 5, 1991, and signed a second note for an additional $4,000 on August 28, 1992. Christopher is not obligated under either note. After the loans were made, National City assigned all of its rights to defendant, Great Lakes Higher Education Corporation ("Great Lakes"). Uterhark made four payments totaling $416.16 before defaulting on the loans, which had become due and payable in June 1993. He filed his chapter 7 petition on March 18, 1994.

### Analysis

11 U.S.C. section 523 provides that:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

. . . .

(8) for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend, unless—

(A) such loan, benefit, scholarship, or stipend overpayment first became due more than 7 years (exclusive of any applicable suspension of the repayment period) before the date of the filing of the petition; or

(B) excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents.

The loans were obtained under the PLUS program. PLUS loans are authorized by Title 4, Part B of the Higher Education Act of 1965 (codified as amended at 20 U.S.C. 1078–2). The PLUS program was enacted to encourage parents to bear a share of a student's undergraduate educational costs, *In re Reid,* 39 B.R. 24, 25–26 (Bankr.E.D.Tenn. 1984) (citations omitted). Loans made under the PLUS program are unusual, if not unique, in imposing sole liability for repayment of the loan on the parent. Uterhark concedes that PLUS loans are "made, insured or guaranteed by a governmental unit" but argues that section 523(a)(8) should be limited to student borrowers and should not apply to him since he received no educational benefit from the loans.

There is nothing in the language of section 523(a)(8) which limits its application to the recipient of educational benefits as opposed to others liable on educational loans. Section 523(a)(8) is expressed in technical legal language which the drafters obviously intended to be as precise as possible. Two exceptions to nondischargeability are carefully delineated in subsections (A) and (B). In view of this care and precision, it appears unlikely that the drafters intended to exclude parent-borrowers from section 523(a)(8) but failed to say so. Nevertheless, a number of courts have accepted the argument that section

523(a)(8) was directed at students and not at parents, at least in the context of loans where both the student and the parent or other co-signor are liable. *In re Kirkish,* 144 B.R. 367 (Bankr.W.D.Mich.1992); *In re Behr,* 80 B.R. 124 (Bankr.N.D.Iowa 1987); *In re Meier,* 85 B.R. 805 (Bankr.W.D.Wis.1986); *In re Zobel,* 80 B.R. 950 (Bankr.N.D.Iowa 1986); *In re Bawden,* 55 B.R. 459 (Bankr.M.D.Ala. 1985); *In re Washington,* 41 B.R. 211 (E.D.Va.1984); *In re Boylen,* 29 B.R. 924 (Bankr.N.D.Ohio 1983) (all holding such debt dischargeable as to co-signor). But the majority of cases, including the one Circuit case that has considered the issue, have held that the parent's liability is nondischargeable under section 523(a)(8) even where the student who actually receives the education is liable on the loan. *In re Pelkowski,* 990 F.2d 737 (3d Cir.1993); *In re Garelli,* 162 B.R. 552 (Bankr.D.Or.1994); *In re Palmer,* 153 B.R. 888 (Bankr.D.S.D.1993); *In re Wilcon,* 143 B.R. 4 (D.Mass.1992); *In re Varma,* 149 B.R. 817 (N.D.Tex.1992); *In re Dull,* 144 B.R. 370 (Bankr.N.D.Ohio 1992); *In re Hawkins,* 139 B.R. 651 (Bankr.N.D.Ohio 1991); *In re Martin,* 119 B.R. 259 (Bankr.E.D.Okla.1990); *In re Hudak,* 113 B.R. 923 (Bankr.W.D.Pa. 1990); *In re Taylor,* 95 B.R. 550 (Bankr. E.D.Tenn.1989); *In re Hammarstrom,* 95 B.R. 160 (Bankr.N.D.Cal.1989); *In re Barth,* 86 B.R. 146 (Bankr.W.D.Wis.1988); *In re Feenstra,* 51 B.R. 107 (Bankr.W.D.N.Y.1985).

No reported case appears to have held that section 523(a)(8) does not apply to an educational loan where, as here, only the parent is liable. *See Pelkowski,* 990 F.2d 737; *Garelli,* 162 B.R. 552; *Wilcon,* 143 B.R. 4; *Varma,* 149 B.R. 817; *Hawkins,* 139 B.R. 651; *Martin,* 119 B.R. 259; *Hudak,* 113 B.R. 923; *Hammarstrom,* 95 B.R. 160; *Feenstra,* 51 B.R. 107. Therefore, Uterhark is requesting that the Court break new ground. Uterhark's support for this request is a statement made by a sponsor of section 523(a)(8) when it was enacted as part of the Bankruptcy Reform Act of 1978.[1] This statement criticizes what the sponsor felt was the fraudulent use of the Bankruptcy Courts by debtors who

... not having assets to pledge [as security for educational loans, are pledging their] future earning power. Having pledged that future earning power, if, shortly after graduation and before having an opportunity to get assets to repay the debt, [they] seek to discharge that obligation, I say that is tantamount to fraud.

124 Cong.Rec. 1793–94 (1978) (remarks of Rep. Erlenborn). Uterhark concludes from these remarks that section 523(a)(8) was intended to apply only to student debtors and not parents who have borrowed to pay the costs of their children's education.

Even if it is conceded that the primary focus of section 523(a)(8) was on student abuse, this focus is not incompatible with a provision which makes all educational loans nondischargeable. The legislative history indicates that Congress was concerned not only with deterring fraud but also with protecting the solvency of educational loan programs. *See In re Merchant,* 958 F.2d 738, 742 (6th Cir.1992) ("Congress enacted 11 U.S.C. § 523(a)(8) in an effort to prevent abuses in *and* protect the solvency of the educational loan programs" (emphasis added)); *Pelkowski,* 990 F.2d at 743 (adopting the holding of the Sixth Circuit in *Merchant* ). Protecting the solvency of the loan programs was the main argument made in favor of the section 503(a)(8) by Representative Ertel, its prime sponsor. *Hammarstrom,* 95 B.R. at 163. This purpose is obviously best served by holding parents', as well as students', obligations on educational loans nondischargeable.

This may explain the fact that no reported case brought to the Court's attention has held the parent's obligation dischargeable where the student was not obligated on the loan. It may be that where the student is liable, some courts have felt that they could give effect to both aspects of the legislative history without jeopardizing the parent's fresh start. Although this might be a practical compromise, it is not one which section 523(a)(8) permits this Court to make. According to the Supreme Court, a court should deviate from the plain meaning of statutory

---

1. For a complete history of the enactment and gradual expansion of the scope of section 523(a)(8), *see Palmer,* 153 B.R. at 892–94 and *Hammarstrom,* 95 B.R. at 163–64.

language only in "rare cases in which the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters." *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 242, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989) (citations omitted). Application of section 523(a)(8) to hold Uterhark's loans nondischargeable is entirely consistent with the intent of Congress as reflected in the legislative history. By barring discharge of educational loans with only parents as makers, the Congressional goal of protecting the integrity of the educational loan programs is served. *Martin*, 119 B.R. at 261; *Hudak*, 113 B.R. at 924; *Hammarstrom*, 95 B.R. at 164; *Feenstra*, 51 B.R. at 110.

Ultimately, Uterhark's argument rests on the fact that failing to discharge the loans runs counter to the "fresh start philosophy of bankruptcy law." This is true and has prompted the Court to look carefully at the language of section 523(a)(8) and its legislative history.

> While it is true that section 523(a)(8) runs counter to the general "fresh start" philosophy of the Bankruptcy Code, the same could be said of any exception to discharge. The exceptions to discharge exist because Congress felt that other public policies outweighed the debtor's need for a fresh start. Although exceptions to discharge are to be construed narrowly, that approach to construction is not a suitable basis for a court to override the plain language of the statute creating the exception.

*Hammarstrom*, 95 B.R. at 165 (quoting *Barth*, 86 B.R. 146, 149); *accord Pelkowski*, 990 F.2d at 744–45 (citations omitted).